

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 30, 2019

**BY ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:   *United States v. Kifano Jordan*, S7 18 Cr. 834 (PAE)

Dear Judge Engelmayer:

    The defendant is scheduled to be sentenced in this matter on September 6, 2019 at 2:30 p.m. The Government respectfully submits this letter in connection with sentencing. The parties entered into a plea agreement (the "Plea Agreement") that calculated a stipulated Guidelines range of 180 months' imprisonment, based on a mandatory minimum sentence of 60 months' imprisonment on Count One, to be followed by a consecutive, mandatory minimum sentence of 120 months' imprisonment on Count Two. The Probation Department calculates the same Guidelines range in the final pre-sentence investigation report, dated August 21, 2019 ("PSR"), and recommends a sentence of 180 months' imprisonment. Consistent with the Plea Agreement, and for the reasons explained below, the Government respectfully submits that a Guidelines sentence of 180 months' imprisonment would be appropriate in this case.

    **I.**    **Offense Conduct**

    The defendant was a high-ranking member of the racketeering enterprise known as the Nine Trey Gangsta Bloods ("Nine Trey"). As detailed in the PSR, Nine Trey was one of the original Bloods sets formed under the United Bloods Nation in 1993. The leadership structure of Nine Trey is divided into two parts: the Prison Lineup, which consists of incarcerated members, and the Street Lineup, which consists of members who are not incarcerated. The defendant held the High 020 position, which is the second highest position in the Street Lineup.

    The defendant was involved in multiple acts of violence, detailed below, in furtherance of the Nine Trey enterprise.

    **November 2017**

    The defendant, along with other members of Nine Trey, including Daniel Hernandez, a/k/a "Tekashi 6ix 9ine" and Anthony Ellison, a/k/a "Harv," followed a rival rap artist, who was a

member of a different Bloods set ("Individual-1"), from Brooklyn to a hotel in Manhattan. After they arrived in Manhattan, the defendant and Ellison ran into the hotel lobby, confronted Individual-1 and his entourage, and Ellison punched Individual-1 in the face.

### March 2018

On or about March 20, 2018, the defendant and other members of Nine Trey, including Hernandez, Denard Butler, a/k/a Drama, and others, traveled to Manhattan to wait for a member of another Bloods set ("Individual-2"), who was providing protection for Individual-1. As Individual-2 exited a building in Manhattan, Individual-2 entered a Sprinter van. Hernandez, Butler and another person were in one car and drove in front of the Sprinter van. The defendant was in another car, which pulled alongside the Sprinter van, and the defendant shot approximately five rounds into the side of the Sprinter van.

### April 3, 2018

On April 3, 2018, the defendant and others traveled from Brooklyn to midtown Manhattan in order to rob a rival gang member and rapper (the "April 3 Robbery"), who was in a public feud with Hernandez. The defendant traveled with Hernandez, Faheem Walter, a/k/a "Crippy," and a cooperating witness in one car, while Jesnel Butler, a/k/a "Ish," Roland Martin, a/k/a "Ro Murda," Denard Butler, a/k/a "Drama," and another traveled in another car. Once the victims entered the lobby of the building, the defendant and Walter ran out of the car and confronted the victims. They were quickly joined by Denard Butler, Martin and another individual. The defendant was holding a pistol throughout the robbery. The April 3 Robbery was recorded by both the building's surveillance cameras and by Hernandez, who was filming the April 3 Robbery from the backseat of a car parked outside the building. After the robbery, the defendant ran back into the car, handed the gun to Hernandez, and directed Hernandez to take the subway.

For his involvement in the April 3 Robbery, the defendant pleaded guilty to possessing a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

### April 21, 2018

On April 21, 2018, the defendant was involved in two shootings. First, in the afternoon, the defendant was with Hernandez, a cooperating witness, and another individual in Brooklyn. As they were leaving a restaurant, an individual shouted a derogatory remark at Hernandez. The defendant confronted the individuals. The defendant, Hernandez, and the others got into their car and drove away. The individual who shouted the derogatory comment and another person followed them in another car. Eventually, the defendant got out of the car, ran towards the individuals and fired two shots at their car. For this conduct, the defendant pleaded guilty to discharging a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

The second shooting took place at the Barclays Center in Brooklyn. The defendant arrived with Hernandez, Denard Butler, Jesnel Butler, Walter, Martin, and Fuguan Lovick, a/k/a "Fu

Banga," among others. Hernandez was scheduled to sing the entrance song for a boxer who had a match that night. While in a hallway in the Barclays Center, the defendant and other Nine Trey members encountered the entourage of a rival rapper, who was a member of a different Bloods set. During the altercation, Lovick fired a gun in the air over the rival gang members' heads. Later, the defendant told Hernandez that the defendant told Lovick to fire his gun. A cooperating witness would further testify that after the shooting, the defendant handed the cooperating witness his coat, which had a gun in one of the coat's pockets. It is unclear whether the gun was the one Lovick used or if it was a different gun.

### June 2, 2018

On or about June 2, 2018, Hernandez asked Kintea McKenzie, a/k/a "Kooda B," to shoot at a rival rapper, who was a member of a different gang ("Individual-3"). Individual-3 and Hernandez had been in a long-running public dispute. Hernandez was with the defendant when Hernandez reached out to McKenzie and offered McKenzie $20,000 to shoot at Individual-3. McKenzie assembled a group of people to shoot at Individual-3. One of those individuals fired one round in the direction of Individual-3, while Individual-3 was standing outside a hotel in Times Square. The next day, the defendant and Hernandez met with McKenzie in New York. Hernandez counted out $20,000, but the defendant took the money and only paid McKenzie $10,000.

### July 16, 2018

On or about July 16, 2018, the defendant and Hernandez were in Los Angeles, when they saw another member of Nine Trey ("Individual-4") post on a social media site. The defendant then contacted Martin, Walter, and others and said, in sum and substance, that they needed to take care of Individual-4. Later that evening, a shooting took place in the area where Individual-4 was staying, and an innocent bystander was struck in the foot.

### July 26, 2018 Recording

On or about July 22, 2018, Hernandez was robbed at gunpoint by Anthony Ellison, a/k/a "Harv" and another person. Later that day, the defendant arrived at Hernandez's house with Jamel Jones, a/k/a "Mel Murda," and brought an AR pistol to Hernandez's house.[1] Several days after the robbery, the defendant was in a car with Hernandez and a cooperating witness. The cooperating witness was recording the conversation. During the conversation, the defendant said, among other things, that because Hernandez was robbed, the defendant would have to retaliate. The defendant acknowledged that he carried around an assault rifle. Finally, the defendant stated, in sum and substance, that when Jones had been robbed in the past, the defendant retaliated by shooting five people.[2]

On or about October 26, 2018, the defendant was involved in an altercation in front of a

---

[1] The firearm was recovered from Hernandez's home on or about September 26, 2018 after agents conducted a search of Hernandez's home.

[2] To date, law enforcement has been unable to identify this act of violence.

restaurant in the vicinity of East 60th Street and Madison Avenue. The defendant, Hernandez, and Walter went to the restaurant to meet with one of Hernandez's music managers. While there, the music manager and the defendant got into a dispute. Hernandez left the restaurant, but the defendant and Water remained, and the two of them got into a physical altercation with the music manager's security guards, one of whom was a retired NYPD officer. During the altercation, the retired NYPD officer fired one shot that struck Walter in the stomach.

### Other Acts in Furtherance of Nine Trey

Apart from the acts of violence detailed above, cooperating witnesses would testify that Jordan arranged to have Individual-4, another Nine Trey member, bring firearms to New York from Georgia. In addition, a cooperating witness, who was a member of Nine Trey, would testify that he supplied approximately 150 grams of heroin to Jordan on consignment, but that Jordan never paid the cooperating witness for the drugs.

## II. Procedural History

The defendant was arrested on November 18, 2018 and has been detained since that date. The initial Indictment charged the defendant in six counts, including racketeering conspiracy, violent crimes in aid of racketeering, and firearms use. On March 28, 2019, the defendant pleaded guilty, pursuant to the Plea Agreement, to a two-count Superseding Information for his possession of a firearm in furtherance of the April 3 Robbery and his discharge of a firearm for the April 21 shooting. The Plea Agreement calculated a Stipulated Guidelines Range of 180 months' imprisonment, based on the mandatory minimum sentences of 60 months' imprisonment on Count One and 120 months' imprisonment on Count Two, to run consecutively. The Probation Department calculated the same Guidelines Range in the PSR and recommended a sentence of 180 months' imprisonment. On August 23, 2019, the defense submitted a sentencing letter seeking a sentence of 180 months' imprisonment.

## III. Applicable Law

The Guidelines still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted

sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)–(7).  *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### IV. Discussion

The Government submits that a Guidelines sentence of 180 months' imprisonment would be sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct.

As set forth above and as detailed in the PSR, the defendant is one of the most culpable Nine Trey members charged in this case.  He was a high-ranking member of Nine Trey and engaged in multiple acts of violence, including several shootings.  The defendant was a vocal proponent of Nine Trey and whenever Nine Trey, or by extension, Hernandez, was disrespected, the defendant chose to respond with violence.  The defendant showed little regard for the safety of others.  Indeed, the March 20 and April 21 shootings were brazen acts of violence that could have been much worse had the defendant struck his intended targets.  Similarly, the defendant ordered other acts of violence, including the July 16 shooting, which resulted in an innocent bystander being struck in the foot.

The defendant's multiple acts of violence and his promotion of these violent acts warrants a significant term of incarceration for both specific and general deterrence.  The public has an interest in incapacitating and deterring the defendant from committing further acts of violence.  Equally important, a message should be sent to others that committing such violent acts and glorifying them in public will result in a long period of incarceration.

The defendant is 37 years old and, despite several convictions, he has never served a lengthy period of incarceration.  Should the Court sentence the defendant to the Guidelines range of 180 months' imprisonment, he will likely be imprisoned until he is nearly 50 years old.  In addition, he will be placed on a term of supervised release.  Hopefully, the defendant will have been deterred from being a part of a gang, and committing acts of violence, upon his release from prison.

Additionally, it should be noted that the defendant was one of the first defendants to plead guilty in this case. Indeed, from the very outset, his attorneys had been in discussions with the Government about reaching a pretrial disposition. In this regard, the defendant almost immediately accepted responsibility for his conduct.

Accordingly, the Government respectfully submits that a Guidelines sentence is appropriate in this case.

    Respectfully submitted,

    GEOFFREY S. BERMAN
    United States Attorney

By:    s/
    Michael D. Longyear
    Jonathan E. Rebold
    Jacob Warren
    Assistant United States Attorneys
    (212) 637-2223 / 2512 / 2264

cc:    Jeffrey Lichtman, Esq. (by ECF)
       Jeffrey Einhorn, Esq. (by ECF)