UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -v- | 18-CR-834-2 (PAE) |
| KIFANO JORDAN, | ORDER |
| Defendant. | |

PAUL A. ENGELMAYER, District Judge:

The Court received a request from defendant Kifano Jordan, seeking his compassionate release from Federal Correctional Institution ("FCI") Allenwood Medium pursuant to 18 U.S.C. § 3582(c), in light of the risk that the COVID-19 pandemic presents for inmates. *See* Dkt. 501 ("Def. Ltr.") at 2. The Government opposes this request. Dkt. 505 ("Gov't Mem.").

Jordan was one of the highest-ranking members of the Nine Trey Gangsta Bloods ("Nine Trey"), ranked just below godfather. Gov't Mem. at 1; *see* Dkt. 329 ("Sent. Tr.") at 7. He was a participant in numerous acts of violence, including an assault in November 2017, an armed robbery in April of 2018, and several shootings. *Id.*; *see* Sent. Tr. at 7, 17. On March 28, 2019, Jordan pled guilty to one count of using a firearm in furtherance of a crime of violence and one count of possessing a firearm which was brandished and discharged, in furtherance of a crime of violence. *See* Dkt. 161 (plea transcript); Dkt. 295 (judgment). On September 6, 2019, the Court sentenced Jordan to 180 months' imprisonment followed by five years' supervised release. *See* Sent. Tr. at 25; Dkt. 295. Jordan has been incarcerated for approximately 19 months of his 180-month sentence. *See* Gov't Mem. at 11. On September 19, 2019, Jordan filed a notice of appeal from his sentence and judgment. Dkt. 317.

On a date unknown to the Court, Jordan filed a request for home confinement with the warden of FCI Allenwood Medium. *See* Def. Ltr. at 2. According to the Government, this request was rejected because Jordan had served less than 12% of his sentence. *See* Gov't Mem. at 5 n.3. On June 18, 2020, the Court received a *pro se* letter from Jordan, seeking early release in light of the COVID-19 pandemic. *See* Def. Ltr.[1] On June 29, 2020, the Government filed its opposition to Jordan's letter. Gov't Mem.

Jordan asks the Court to convert his remaining period of incarceration to a term of supervised release, on account of the risk COVID-19 poses to him. *See* Def. Ltr. at 6. Specifically, he alleges that he suffers from hypertension, stress, and selective antibody deficiency. *Id.* at 4. The Government opposes Jordan's early release. It argues that Jordan's motion should be denied for reasons including that the Court lacks jurisdiction because Jordan filed an appeal, and that Jordan has not exhausted his administrative remedies, has not presented an extraordinary and compelling reason justifying his release, is a danger to the community, and has served significantly less than half of his sentence. *See* Gov't Mem. at 1.

**I.      Jurisdiction**

In light of Jordan's pending appeal, the Court lacks jurisdiction to decide his motion. "The filing of a notice of appeal is an event of jurisdictional significance," which "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects

---

[1] The Court directed Jordan's trial counsel to file a letter in support of that application and directed the Government to thereafter submit a letter setting forth its position. *See* Dkt. 501 at 1. The Court did not invite a reply. *Id.* On June 18, 2020, Jordan's trial counsel moved to be relieved on account of what Jordan's letter described as a "complete breakdown in communications," Dkt. 502 (quoting Dkt. 501). On June 22, 2020, the Court granted counsel's motion, but could not appoint successor counsel for Jordan, as his trial counsel was retained (not court-appointed), and Jordan has not submitted a financial affidavit indicating his eligibility for appointment of counsel. Dkt. 503. On July 2, 2020, the Court received a letter from Jordan seeking permission to file a reply. Dkt. 514. The Court denies that request.

of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).  Although there are exceptions to this rule—*e.g.*, *Tancredi v. Met. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004) (attorneys' fees); *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989) (proceedings on merits after grant or denial of preliminary injunction); *id.* (judgment which does not determine entire action); *Leonhard v. United States*, 633 F.2d 599, 610 (2d Cir. 1980) (clerical error)—none appears applicable here.  *See United States v. Viola*, 555 F. App'x 57, 59–60 (2d Cir. 2014) (notice of appeal divests district court of ability to act "to modify a judgment substantively," although district court retains authority to "merely clarif[y]" its order (citations omitted)).

Under these circumstances, this Court is without authority to "rule on any motion affecting an aspect of the case that [is] before the [Court of Appeals]." *Ching v. United States*, 298 F.3d 174, 180 n.5 (2d Cir. 2002); *see also, e.g.*, *Berman v. United States*, 302 U.S. 211, 214 (1937) (rule applies in criminal cases); *United States v. Katsougrakis*, 715 F.2d 769, 777 (2d Cir. 1983) (same); *United States v. Afriyie*, No. 16 Cr. 377 (PAE), 2017 WL 6375781, at *3 (S.D.N.Y. Dec. 11, 2017) (same).  Once Jordan filed his notice of appeal challenging the Court's sentence, jurisdiction over the questions raised in his § 3582(c) motion transferred to the Second Circuit.

Federal Rule of Criminal Procedure 37 anticipates precisely the jurisdictional issue present here.  Rule 37 provides, in relevant part, that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  Fed. R. Crim. P. 37(a).  The advisory committee notes list "motions under 18

U.S.C. § 3582(c)" as one of three types of motions for which the drafters "anticipate[] that Criminal Rule 37 will be used primarily if not exclusively." Fed. R. Crim. P. 37 advisory committee's note (2012). Reflecting this Circuit's longstanding approach in both civil and criminal cases—*see, e.g.*, *United States v. Camacho*, 302 F.3d 35, 36–37 (2d Cir. 2002); *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir. 2002); *Toliver v. Cty. of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992)—this rule allows district courts to deny, but not to grant, a motion for which it lacks jurisdiction due to a pending appeal.

**II.     Merits**

Because the Court would deny Jordan's § 3582(c) motion if he had not filed a notice of appeal, in the interests of judicial economy, the Court reaches the merits, pursuant to Rule 37, and denies the motion.

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

Here, the Government argues, at the threshold, that Jordan's motion should be denied because he has failed to exhaust his administrative remedies, in that he never submitted a compassionate release request to the BOP.[2]  *See* Gov't Mem. at 5. The Court need not reach this

---

[2] The Government does concede that Jordan submitted a request to be placed on home confinement pursuant to 18 U.S.C. § 3624(c)(2). *See* Gov't Mem. at 5 n.3.

4

argument, however, because the Court concludes that a reduction of Jordan's sentence is not warranted for two independent reasons. Such a reduction would not be "consistent with the applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), nor would it be supported by the "factors set forth in section 3553(a)," *id.* § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (quoting 28 U.S.C. § 994(t)). Relevant here, the Commission's policy statement and its corresponding commentary on § 3582(a)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[3] U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). The defendant must also not be a danger to the community and the reduction must be consistent with the Commission's policy statement. *Id.* § 1B1.13(2)–(3).

The first of these factors favors, to a degree, Jordan's early release. The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration. Further, the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it

---

[3] U.S.S.G. § 1B1.13(1)(A) references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts. *See Ebbers*, 432 F. Supp. 3d at 422–23, 427.

gains entry, will spread.[4] And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous courts, including this one, have ordered the temporary release of inmates held in pretrial or presentencing custody[5] and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences.[6]

---

[4] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (Mar. 30, 2020, updated May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, No. 18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) (citing *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

[5] *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, --- F. Supp. 3d ---, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *2–3 (S.D.N.Y. Mar. 30, 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to defendant who had pleaded to a narcotics offense); *cf. United States v. Stephens*, --- F. Supp. 3d ---, No. 15 Cr. 95 (AJN), 2020 WL 1295155, at *3 (S.D.N.Y. Mar. 19, 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would necessitate his temporary release).

[6] *See, e.g.*, *United States v. Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (ordering compassionate release of 65-year-old defendant with several high-risk medical conditions who was not a danger to the community); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. April 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence); *see also infra* n.8.

The Government disputes that Jordan is at a significantly heightened risk—*i.e.*, whether he is materially more vulnerable to the effects of COVID-19 than an average (non-high-risk) inmate at FCI Allenwood Medium.[7] Nevertheless, even viewing this factor in Jordan's favor, a reduction in his sentence is not supported under the § 3553(a) factors for two independent reasons.

First, the Court cannot find that Jordan "is not a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2), as is required for compassionate release. Jordan's conduct in this case gravely endangered public safety. Jordan was a "lead member of a violent and destructive gang, Nine Trey" and "participated in multiple acts of violence." Sent. Tr. at 17. These acts of violence included holding a pistol during a robbery, partaking in multiple different shootings, one of which resulted in a bystander being shot in the foot, and ordering others to participate in shootings. *See id.* at 17–18. During one shooting, Jordan fired at a moving vehicle nine times. *Id.* at 17. At Jordan's sentencing, the Court observed that although "through some combination of sheer luck and bad aim no one died [during any of these incidents]," his violent conduct could easily have resulted in "a large number of casualties." *Id.* at 18–19.

The instant offense was also not the first time that Jordan had endangered public safety; he has a history of violent and potentially violent offenses, including possession of a firearm, reckless endangerment, theft by deception, and attempted assault. *See id.* at 20. For these reasons, the Court, at sentencing, found that specific deterrence necessitated a meaningful sentence, along the lines of the sentence imposed, as none of Jordan's earlier terms in prison had

---

[7] Specifically, the Government notes that the medical conditions Jordan mentions are not reflected in his medical records, nor is any condition that would put him at a heightened risk. *See* Gov't Mem. at 11.

"served as wake-up calls." *Id*. That remains the case. The Court cannot find today that the vastly shortened sentence Jordan seeks is compatible with public safety.

Independently, the Court cannot find that the application of the § 3553(a) factors favors Jordan's release after service of 19 months of a 180-month sentence. To be sure, one § 3553(a) factor weighs more heavily in Jordan's favor today than at the time of sentencing: "the need to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a). But the Court cannot find that a sentence reduction on the order Jordan seeks would result in a sentence commensurate with "the nature and circumstances of the offense," "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense, . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant," *id*. The gravity of Jordan's crimes required, and requires, a meaningful sentence to protect the public from further violence; to reflect just punishment for these crimes; and to deter others from committing similar acts. For the reasons stated in detail at Jordan's sentencing, which the Court incorporates by reference, a sentence in the range of 180 months' imprisonment was necessary to achieve those goals. Reducing Jordan's sentence by way more than half would badly disserve these important § 3553(a) factors.

Relevant too to the application of the § 3553(a) factors today, Jordan's case stands in sharp contrast to those in which the Court has ordered the release of heightened-risk inmates. In a number of cases, where an inmate seeking release had served most of his or her term of

incarceration, this Court has found that a fresh assessment of the § 3553(a) factors justified early release.[8] Jordan, on the other hand, is not even close to the midway point of his sentence.[9]

Accordingly, finding that Jordan continues to pose a danger to the community and that the § 3553(a) factors, considered in combination, do not support a reduction of his sentence, the Court denies Jordan's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

SO ORDERED.

                                                                                                *Paul A. Engelmayer*
                                                                   PAUL A. ENGELMAYER
                                                                   United States District Judge

Dated: July 8, 2020
       New York, New York

---

[8] *See, e.g., United States v. Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 (S.D.N.Y. April 10, 2020) (defendant had served all but seven months of an 88-month sentence and was eligible for home confinement in two weeks' time); *Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 (S.D.N.Y. April 6, 2020) (defendant had served all but 34 days of a four-month sentence and had an immune-inflammatory disease); *United States v. Hernandez*, --- F. Supp. 3d ---, No. 18 Cr. 834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. April 2, 2020) (defendant had served 17 months of a 24-months sentence).

[9] *See, e.g., United States v. Nissen*, No. 17 Cr. 477 (PAE), 2020 WL 2614825, at *3 (S.D.N.Y. May 22, 2020) (denying compassionate release motion and finding that a reduction of a 27-month sentence to seven months would be "highly inconsistent" with the 3553(a) factors); *United States v. Butler*, No. 18 Cr. 834 (PAE), 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release motion for lower-ranking Nine Trey defendant diagnosed with asthma and a cardiac condition where defendant had served only 15 months of a 60-month sentence); *United States v. Credidio*, No. 19 Cr. 111 (PAE), Dkt. 62 (S.D.N.Y. Mar. 30, 2020) (for similar reasons, denying compassionate release motion for a defendant at heightened risk of COVID-19 who had served just two months of a 33-month sentence).