Dear Honorable Judge Engelmayer,
                              I write this letter
in hope that aside from the reasons stated in my
motion that you would consider other factors in granting
my sentence reduction. I have grown and changed in
ways that sometimes astonishes me, I am no longer
the person I was before. My deteriorating health and
living through the Covid 19 Pandemic incarcerated was
an awakening for me it brought my mortality front
and center in a way I have never experienced. Imagine
the thought and real possibility of not being able to atone
to the people you've wronged and never seing your loved
ones again. In those dark days I decided no matter my
situation I would make a concious effort to change
and I have. I no longer associate myself with
anything or anyone that lives by "gang or street"
culture even though in this environment it is detrimental
to my safety. I focus on building a strong relationship
with GOD and my children and learning how to be
a better parent. I ask that you give me a chance to
use the tools that I've been given and an opportunity
to show the world that I've truly changed, and that
I am a better person. Change is impossible to see but
actions are not.

                              Sincerely Yours,
                              Kifano Jordan

                              8/14/2025

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

# FOLEY SQUARE DIVISION

---

1:18-cr-00834-PAE-2

---

**KIFANO JORDAN**

**Defendant,**

v.

# UNITED STATES OF AMERICA

---

# MEMORANDUM OF SUPPORTING FACTS FOR A

# TITLE 18 U.S.C. SECTION 3582 (c) (1) (A) MOTION FOR

# COMPASSIONATE RELEASE

---

**Kifano Jordan # 86333-054**
**FCI Allenwood/ Med.**
**P.O. Box 2000**
**White Deer, PA 17887**

## I. Preliminary Statements

Comes now, the petitioner, Kifano Jordan by and through this pro se motion, respectfully moves this Honorable Court pursuant to the amended 18 U.S.C. Section 3582 (c) (1) (A) (i); compassionate release ensues as required. The petitioner respectfully requests that this honorable court, after considering the applicable factors, consider reducing his sentence if the circumstances meet the extraordinary and compelling reasons required under 3582 (c) (1)(a)(l). Petitioner, Kifano Jordan, respectfully requests this Honorable Court to decrease the sentence by 48 months (from 180 months to 132 months)[1], after having completed 60% of his sentence with jail credit, earned-time-credits, and good-conduct-time credits. Alternatively, petitioner Jordan requests a reduction in his total sentence as this court sees fit.

## II. Exhaustion of Administrative Remedies

A defendant may only file a motion for compassionate release with the district court once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. section 3582 (c) (1) (A). The defendant filed a request for relief with the warden at this facility on April 28, 2025. The warden responded to the request on May 6, 2025. **See Exhibit I**. Defendant has therefore exhausted his administrative remedies as required by statute.

## III. Procedural History

Petitioner Jordan was indicted for violation of 18 U.S.C. sections 924 (c) (1) (A) (i) and 2, possessing a firearm during and in relation to a crime of violence. He was also charged with violation of 18 U.S.C. sections 924 (c) (1) (A) (i) – (iii) and 2, brandishing and discharging a firearm during and in relation to a crime of violence. Mr. Jordan pled guilty to a two-count information pursuant to a plea agreement. The court sentenced Mr. Jordan to 180 months (120

2

months on Count 1 and a consecutive 60 months on Count 2) in the custody of the Federal
Bureau of Prisons, followed by five years of supervised release.

After Mr. Jordan was sentenced, prior to his direct appeal being resolved, Mr. Jordan
wrote a letter requesting compassionate release due to the Covid-19 virus. He requested the
appointment of counsel. The District Court denied the motion because Mr. Jordan had not
exhausted his administrative remedy with BOP before he sought release from the court, it could
not say that Mr. Jordan would not pose a threat to the community, and the section 3553 (a)
factors did not support a reduction. Defendant's direct appeal to the Second Circuit was affirmed
on May 21, 2024.

In this motion for compassionate release/reduction in sentence to the Court, Mr. Jordan
has exhausted his administrative remedy with BOP with the warden's denial of the request on
May 6, 2025. **Exhibit I.**

## IV. Extraordinary and Compelling Reasons

Mr. Jordan asserts that his medical condition (chronic pancreatitis), the continuous
lockdowns at FCI Allenwood Medium due to the staff shortage, and his efforts at rehabilitation are
extraordinary and compelling reasons that should warrant a reduction in his 180-month sentence.

## A. Medical condition.

The petitioner, Mr. Jordan, suffers from a medical condition diagnosed as chronic
pancreatitis. **See Exhibit II**. Chronic pancreatitis is severe, long-term inflammation of the
pancreas that gradually causes permanent damage to the pancreas. The constant inflammation
causes scarring of your pancreatic tissues (fibrosis), which stops them from making necessary
enzymes and hormones. For Mr. Jordan, this disease has resulted in frequent, severe abdominal
and back pain, along with chronic nausea. Mr. Jordan has not been able to obtain proper
medications to manage his severe pain and/or nausea.

Pancreatitis damages pancreatic tissue in a manner that can cause insufficient insulin production. The pancreas is essential for blood sugar regulation so individuals with pancreatitis have a significantly increased risk of developing diabetes. Normal maintenance for individuals with pancreatitis includes frequent blood sugar monitoring. Mr. Jordan has not received this monitoring. Stress is a noted cause for pancreatitis flare ups. A pancreatitis flare up is defined as a sudden worsening or recurrence of inflammation in the pancreas which can be a painful, sometimes life-threatening medical emergency. Frequent lock downs and loss of visitation with family due to staffing inadequacies, which are the norm at the prison Mr. Jordan is serving his sentence, have contributed to pancreatic flare ups. Improperly treated pancreatitis can lead to systemic inflammation affecting other organs, leading to multi-organ failure, sepsis and death.

Diet modifications are necessary to decrease flare ups. Prison conditions make it difficult for Mr. Jordan to consume a proper, low-fat meal. Mr. Jordan has expressed his need for this dietary modification and requests have gone unanswered. Alternative meals on commissary are high in fat, sugar and sodium, all poor choices for an individual with pancreatitis.

Petitioner Jordan is not requesting immediate release, but instead, he is requesting a reduction in his 180-month sentence so that, as his condition worsens, he is able to receive proper medical care.

### B. Frequent lockdowns at FCI Allenwood Medium

FCI Allenwood Medium has been on lockdown for almost as many days in previous years as there has been free movement around the facility. Due to staffing shortages, inmates experience modified schedules which leave them in their cell majority of the day.

Following a nine-week prison wide lockdown which started in January 2024, the prison began a modified lock in schedule. From March-May 2024, the allowed time out of the cell was from 06:30 am -1:45 pm. While Mr. Jordan did attempt, unfortunately, the memos showing this

4

modified schedule were not able to be printed. In May, prisoners were allowed out of their cells until after dinner, around 8:45 pm only on Tuesdays/ Thursdays, with the remainder of the nights still locked down at 1:45 pm.

Allenwood Medium was on lockdown the entire month of October 2024, meaning the education department was closed, all programming was placed on hold, and religious services, outdoor activities at recreation, and visitation were shut down. On or about December 9, 2024, inmates were placed on lockdown for a week, and if copies were needed for legal work, no copies could be made. Also, when the institution was not on lockdown, inmates were locked down before 6 pm for the rest of the evening and night, which is considered modified lockdowns. There was an eight-day lockdown in January 2025. Inmates were allowed one shower during the eight days. Inmates were not allowed to clean the showers although there were only four working showers for 120+ inmates. On or about February 19, 2025, FCI Allenwood Medium was placed on yet another lockdown that lasted several days. FCI Allenwood recently (May 2025) completed a one and half month lockdown related to reports that an inmate used Vaseline to make tattoo ink. Of the 120+ inmates on the unit, none reported illnesses related to this but three staff members reported illnesses. These staff members returned to work the next day but the lockdown remained in place for the 1.5 months.

During all these lockdowns, visitation was cancelled. Visitation recently resumed in April 2025 but are non-contact visits. Visitors sit on one side of a plastic partition and the inmates sit on the other side. They communicate through 15 holes in the plastic barrier. Inmate visitation is scheduled for weekends and holidays, but visitors are often turned away due to staff call ins. This has caused Mr. Jordan to tell his elderly father not to visit him as he has come to FCI Allenwood several times only to be turned away. Mr. Jordan has been housed at FCI Allenwood for seven years and has been unable to see his father.

During lockdowns, you are supposed to get at least one hot meal during the day, but hot

5

meals are non-existent during lockdowns.

A prison lockdown means that everyone in a unit of a prison, or as the instant matter of FCI Allenwood, everyone in an entire prison, or everyone in all prisons managed by a certain entity (like a U.S. state or the federal government) is restricted to their cells for 22 to 24 hours per day. Lockdowns mean prisoners, like the petitioner, do not have access to educational services, recreation, rehabilitation programming, exercise, visitation, the telephone or computer to communicate with family, and other services. Lockdowns often involve a form of solitary confinement, as each inmate is confined to their cell for most of the day or the entire day. It is worth mentioning that the United Nations Human Rights Office has identified prolonged solitary confinement as a form of torture.[2]

While lockdowns may occasionally be necessary to establish safety and security within a prison, the overuse of lockdowns and the increasingly long durations with which they are being used leads to serious mental health concerns, frayed family ties, lack of access to educational programming, lack of progress in rehabilitation courses, and a host of other problems that raise tensions in prisons and push inmates away from reform, not towards it. In simple terms, perpetual and repetitive prison lockdowns are counterproductive.

Petitioner Jordan has been incarcerated for the entirety of the COVID-19 Pandemic and therefore has endured numerous lock downs. He has also suffered needlessly because of the Bureau's inability to stop the flow of drugs into their institutions and the lockdowns that have been associated with attempts to control this.

FCI Allenwood was hit particularly hard during the pandemic and was subsequently required to operate with the most severe restrictions. As to the harshness of incarceration caused by the pandemic, many courts agreed that is "undoubtedly, a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exact a price

6

on a prisoner beyond that imposed by an ordinary day in prison." (please see Johnson, 2023 US

Dist. Lexis 72906,2023 WL 30 (quoting USA v. McRae, NO 17 cr. 0643, US Dist. Lexis 8777,

2021 142277, at 5 (SDNY Jan 2024).

Hence, "detention during the Pandemic is essentially equivalent to either time and half or

two times what would ordinarily be served." Id (citing USA v. Elias, 579 F. Supp. 3d 374, 37B

(EDNY 2022). Consequently, "particularly for defendants who have (i) served long sentences

and (ii) have been detained for the entirety of the Pandemic," courts have been willing to

conclude that "pandemic-induced conditions of confinement can constitute extraordinary and

compelling circumstances warranting compassionate release." (Oquendo. 2023 US Dist. Lexis

8073. 2023WL 199609, at '5): See US v. Russo, 2022 US Dist. Lexis 213643, 2020 WL

17241005, at '6 (in addition to the health risk posed by the pandemic, the restrictions at (Federal

Correctional Facilities) during the pandemic have made (Petitioner's) incarceration much more

punitive than originally contemplated at the time of sentencing. "Citing US v. Rodriguez, 492 F.

Supp. 3d. 306.31 (SDNY 2020); US v. Hatcher. No. 18-cr 0454, 2021 US Dist. Lexis 74760.

2021WL 1535310, at '3 (SDNY April 19, 2021). Courts reviewing motions for sentence

modifications have considered the extent to which erroneous lockdowns and restrictions

imposed by correctional facilities attempting to control the spread of the virus have made

sentences "harsher and more punitive than would otherwise have been the case") (2023 US

DIST. Lexis 23) Rodriquez, 492 F. Supp. 3d. At 311.

Furthermore, a defendant, Joshua Souza, serving a federal sentence at FCI Allenwood

filed a motion pursuant to 18 U.S.C. Section 3582 (c) (1) (A) for compassionate release and

asserted as his extraordinary and compelling reasons were the constant lockdowns due to staff

shortage at the institution, which has caused a loss of visitation, education opportunity, and cruel

and unusual harsh punishment. United States v Souza, 1:18-cr-00083. On February 7, 2025, a

federal district court judge in Rhode Island held that the "extraordinary difficult conditions at

7

FCI Allenwood Medium" created by a staff shortage have caused multiple lockdowns for prolonged period (weeks and months), loss of visitation, and inmates are unable to provide basic hygiene for themselves with once-a-week showers. United States v Souza, 1:18-cr-00083 (RID Feb. 7, 2025). Therefore, "lockdowns" have been determined to be an extraordinary and compelling reason to be considered in a motion requesting compassionate release.

Additionally, an exclusive, eight-month investigation for Truthout has revealed that numerous federal prisons make people suffer through constant lockdown "cycles," where [2]1. UNHR. "United States: Prolonged solitary confinement amounts to psychological torture, says UN expert." United Nations Human Rights Office of the High Commissioner, 2020. www.ohchr.org. Prisoners get a very brief return to normal general population status before they are once again subject to several days or weeks of lockdown. Inmates on lockdown have no routines or any real rights whatsoever. There is no guarantee of exercise, showers are irregular at best, and access to phone, email or visitation are non-existent. Education, religious activities, rehabilitative programs, psychiatric intervention to crises, access to commissary are typically denied or nearly impossible to get. Meetings with attorneys come to a halt or are hard to obtain. People under lockdown are often not given basic hygiene materials such as soap or toothpaste. Prison lockdowns have intensified in both duration and levels of abuse and deprivation over the years. Some examples include severe limits on access to confidential legal counsel, denial of family visitation without explanation, returned email or postal communication without justification, and many other restrictions that violate both constitutional rights and prison regulations.

Many correctional officers see frequent lockdowns as detrimental, according to civil rights advocates. Lockdowns are bad for everybody, including staff." David Fathi, director of the ACLU's National Prison Project, told Truthout.[3] "It is extremely stressful and causes

07/25/2025

horrible working conditions, particularly as staff are forced to put in mandatory overtime.

Lockdowns have a profound impact on the mental and emotional well-being of inmates. Prolonged periods of confinement and restricted social interaction lead to increased stress, anxiety, and feelings of isolation among inmates. These psychological effects can negatively impact their overall well-being and contribute to a challenging prison environment.

A new rule has been instituted at FCI Allenwood Medium, which directly affects petitioner Jordan. To stay encouraged during frequent lockdowns, Mr. Jordan has several magazine subscriptions and regularly received books through Amazon which were ordered by his loved ones. As of June 2025, inmates are no longer able to have these magazines [3] ʿCopyright © Truthout @ SiljaJATalvi) subscriptions and loved ones cannot send books through amazon. Items must be purchased through a vendor the prison has selected. These items are being priced with 30% markup. This has decreased the amount of reading material Mr. Jordan's loved ones are able to send, making the time during lock down even more difficult.

## C. Staff shortage

Prisons and local jails struggled with staffing well before the COVID-19 pandemic spurred a national labor shortage, and they have not rebounded since. Lack of staffing has resulted in prison schedules not returning to normal. COVID caused a disruption in the normal inmate schedule and those negative effects are still present.

When there are fewer workers than necessary to operate facilities as planned, correctional authorities cut back on the things staff need to manage, and conditions get worse. People are stuck in lockdown conditions, housing units are consolidated, access to services and programming is limited, and violence within the facility increases. As conditions deteriorate, fewer people want to work in these facilities resulting in worsening staff shortages. We respectfully encourage the courts to explore the staffing shortages present at FCI Allenwood

Medium.

## D. Efforts at rehabilitation

Pursuant to 28 U.S.C. section 994 (t), rehabilitation of the petitioner is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the petitioner while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the petitioner's term of imprisonment is warranted. In spite of his criminal acts that caused his incarceration, Mr. Jordan has turned the corner on criminal activities. He has taken full accountability for his actions, acknowledges his wrongdoing and expresses remorse for those actions. Mr. Jordan has approached his term of imprisonment with optimism and a desire to be productive and transform his life. He has maintained a positive outlook on future endeavors that will benefit him in maintaining a criminal free lifestyle upon release. **See Exhibit III**. Defendant has targeted his bad behavior with self-help classes/courses to improve himself. Since being incarcerated Mr. Jordan has earned his high school equivalency credential, completed a course offered by the NOCTI in which he exceeded the national standard in Plumbing. He has received certificates of completion for successfully completing Forklift Operations and Safety Training, Fire Extinguisher Maintenance and Inspection, a drug abuse education course, and Phases One and Two of the National Parenting Program. **See Exhibit IV**. He has completed the following Release Preparation classes: Health and Nutrition, Employment, Personal Finance, Information and Community, Release Requirements/Procedures, and Personal Growth/Development. Mr. Jordan has read countless books and has assisted his peers by encouraging them to engage in programming and recreation to ease the struggles of serving time. He has served as a positive mentor to his peers and has contributed to a decrease in violence in his housing unit. Mr. Jordan has maintained a work assignment over the course of seven years. Mr. Jordan has remained free of any disciplinary action since 2022.

Even before the new amendment to the section 1B1.13 on compassionate release, numerous district courts had found that changed circumstances and rehabilitation efforts were "extraordinary and compelling" circumstances that warrant a reduction in sentence under 18 U.S.C. section 3582 (c) (1) (A). Importantly, evidence of post-sentence rehabilitation is likely the most critical of core considerations for the Court in section 3582 (c) proceeding. In Pepper v. United States, 131 S.Ct. 1229, 1241 (2011), the Court emphasized the important nature of post-sentence rehabilitation, stating that "there would seem to be no better evidence than a defendant's post incarceration conduct."

### Blatant disregard for Mr. Jordan's health

On June 13, 2025, Mr. Jordan went to health services to get help with his stomach issues. In doing so he was met with deliberate indifference from the medical staff at FCI Allenwood/Medium. As mentioned therein, Mr. Jordan suffers from pancreatitis, He has had sharp pains in his abdomen area and has seen blood in his stool on many occasions. Mr. Jordan has yet to have a proper examination. (**Please see exhibit V**)

### V. Title 18 U.S.C. Section 3553 (a) Factors

Demonstrating an extraordinary and compelling reason to reduce a sentence meets the element of section 3582 (c) (1) (A) motion. To determine whether relief is appropriate, a court must also consider the federal sentencing objectives set forth in 18 U.S.C. section 3553 (a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. See 18 U.S.C. section 3553 (a) (1), (2). Courts may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. See id. section 3553 (a) (4), (6).

07/25/2025

Considering defendant's significant post-sentencing rehabilitation efforts, defendant respectfully submits that a reduction under section 3582 (c) (1) (A) to a sentence of 132 months "sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in section 3553 (a) (1), or, in the alternative, a reduction in the sentence. See United States v. Lopez, 2020 WL 6298061 (D. Haw. Oct. 27, 2020)

Reducing the 180-month sentence by 48 months to one hundred and thirty-two months would still reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense or adequate deterrence to criminal conduct. Congress has directed sentencing courts to consider the need for a defendant's sentence to afford adequate deterrence to criminal conduct. 18 U.S.C. Section 3553 (a) (2) (B). The completion of more than 60% of the imposed 180-month sentence has certainly deterred petitioner Jordan from engaging in criminal activity.

As to the need for the sentence imposed to reflect the seriousness of the offense; to promote respect for the law, and to provide punishment for the offense, the petitioner requested a reduction in his 180-month sentence by 48 months. A sentence reduction is not contrary to the section 3553 (a) factors. On Defendant's last Progress Report dated 5/20/2025, it stated in General Comments that "Inmate Jordan is not considered to be a management concern. He is respectful towards staff and his peers, and, under Release Planning, it stated that Defendant will be considered for Residential Reentry Center placement when he is within 17-19 months of his projected release date. The section 3553 (a) factors now support a sentencing reduction.

## VI. Release Plan

Upon release from BOP custody, if it pleases the court and probation, Mr. Jordan will reside with his cousin:

Nicole King

852 Sharon Lane

Westbury, NY 11590

If acceptable to this court and probation, Mr. Jordan will work for Nicole King, at Diaspora Community Services as a community outreach specialist. Mr. Jordan would oversee planning and leading youth-focused outreach programs, partnering with schools, community centers and local service agencies and identify challenges facing at-risk youth and helping them overcome those obstacles.

Alternatively, Mr. Jordan received an offer of employment from Navarro Gray, owner of CloudMusix. Mr. Jordan has a passion for music and has been successful in the music industry. He would be the president of artists and repertoire consulting with artists, overseeing their projects and assisting them in meeting their music delivery deadlines.

Mr. Jordan has also expressed interests in utilizing his plumbing credentials. Mr. Jordan will continue his religious practice and plans to routinely attend services at his local mosque.

## Conclusion

In conclusion, Mr. Jordan is respectfully asking this court to reduce his sentence from 180 to 132 months. He takes full accountability and is grateful that he has been held accountable for his actions. However, being medically and mentally tortured with his time at Allenwood FCI, has

13

represented punishment beyond what this court or congress could have predicted at the time of sentencing. Mr. Jordan has shown that he is fully rehabilitated and is no longer a danger to society. Petitioner Jordan will be a positive member of the community once given the opportunity to reintegrate. A sentence reduction from 180 months to 132 months will serve as a deterrence from future crime. This sentence promotes respect for the law and courts, along with meeting the requirement of 18 U.S.C. 3553(a). Mr. Jordan thanks you for your consideration.

Respectfully,

8/14/2025

Kifano Jordan

(Petitioner)

Dated: ▩/2025

Kifano Jordan # 86333-054
FCI Allenwood/ Med.
P.O. Box 2000
White Deer, PA 17887

AO 250 (Rev. 09/20) Pro-Se Motion for Compassion Release

# UNITED STATES DISTRICT COURT
# FOR THE
SOUTHERN     DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

**Case No.** 1:18-cr-00834-2
(write the number of your criminal case)

v.

KIFANO JORDAN

Write your full name here.

**MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)**
(*Pro Se* Prisoner)

---

## NOTICE

The public can access electronic court files. Federal Rule of Criminal Procedure 49.1 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

---

Does this motion include a request that any documents attached to this motion be filed under seal? (Documents filed under seal are not available to the public.)

☐ Yes

■ No

If you answered yes, please list the documents in section IV of this form.

## I.    SENTENCE INFORMATION

Date of sentencing:                     9/6/2019

Term of imprisonment imposed:            180 months

Approximate time served to date:

Projected release date:                  10/24/2031

Length of Term of Supervised Release:  5 years

Have you filed an appeal in your case?

■ Yes

☐ No

Are you subject to an order of deportation or an ICE detainer?

☐ Yes

■ No

## II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES[1]

18 U.S.C. § 3582(c)(1)(A) allows you to file this motion (1) after you have fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on your behalf, or (2) 30 days after the warden of your facility received your request that the warden make a motion on your behalf, whichever is earlier.

Please include copies of any written correspondence to and from the Bureau of Prisons related to your motion, including your written request to the Warden and records of any denial from the Bureau of Prisons.

---

[1] The requirements for this compassionate release motion being filed with the court differ from the requirements that you would use to submit a compassionate release request to the Bureau of Prisons. This form should only be used for a compassionate release motion made to the court. If you are submitting a compassionate release request to the Bureau of Prisons, please review and follow the Bureau of Prisons program statement.

Have you personally submitted your request for compassionate release to the Warden of the institution where you are incarcerated?

▣ Yes, I submitted a request for compassionate release to the warden on
 4/28/2025          .

☐ No, I did not submit a request for compassionate release to the warden.

If no, explain why not:

Was your request denied by the Warden?

▣ Yes, my request was denied by the warden on (date): 5/6/2025 - Exhibit I .

☐ No. I did not receive a response yet.

## III. GROUNDS FOR RELEASE

Please use the checkboxes below to state the grounds for your request for compassionate release. Please select all grounds that apply to you. You may attach additional sheets if necessary to further describe the reasons supporting your motion. You may also attach any relevant exhibits. Exhibits may include medical records if your request is based on a medical condition, or a statement from a family member or sponsor.

### A. Are you 70 years old or older?

☐ Yes.

▣ No.

If you answered no, go to Section B below. You do not need to fill out Section A.

If you answered yes, you may be eligible for release under 18 U.S.C. § 3582(c)(1)(A)(ii) if you meet two additional criteria. Please answer the following questions so the Court can determine if you are eligible for release under this section of the statute.

Page **3** of **6**

Have you served 30 years or more of imprisonment pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which you are imprisoned?

☐ Yes.

☐ No.

Has the Director of the Bureau of Prisons determined that you are not a danger to the safety of any other person or the community?

☐ Yes.

☐ No.

**B. Do you believe there are other extraordinary and compelling reasons for your release?**

■ Yes.

☐ No.

If you answered "Yes," please check all boxes that apply so the Court can determine whether you are eligible for release under 18 U.S.C. § 3582(c)(1)(A)(i).

☐ I have been diagnosed with a terminal illness.

■ I have a serious physical or medical condition; a serious functional or cognitive impairment; or deteriorating physical or mental health because of the aging process that substantially diminishes my ability to provide self-care within the environment of a correctional facility, and I am not expected to recover from this condition.

☐ I am 65 years old or older and I am experiencing a serious deterioration in physical or mental health because of the aging process.

☐ The caregiver of my minor child or children has died or become incapacitated and I am the only available caregiver for my child or children.

☐ My spouse or registered partner has become incapacitated and I am the only available caregiver for my spouse or registered partner.

■ There are other extraordinary and compelling reasons for my release.

Please explain below the basis for your request. If there is additional information regarding any of these issues that you would like the Court to consider but which is confidential, you may include that information on a separate page, attach the page to this motion, and, in section IV below, request that that attachment be sealed.

I have a serious physical or medical condition that substantially diminishes my ability to provide self-care within the environment of a correctional facility, and I am not expected to recover from this condition. I have suffered from chronic pancreatitis for many years.

Chronic pancreatitis itself is not terminal, but complications can lead to death. Severe cases of chronic pancreatitis can be fatal, and complications such as pancreatitis cancer or diabetes may reduce life expectancy. In severe cases, systemic inflammation can affect other organs, leading to multi-organ failure and sepsis. SEE MEMORANDUM OF SUPPORTING FACTS and EXHIBIT II

The other reasons for requesting compassionate release are due to constant lockdown at FCI Allenwood Medium and the staff shortage. SEE MEMORANDUM OF SUPPORTING FACTS

## IV.    ATTACHMENTS AND REQUEST TO SEAL

Please list any documents you are attaching to this motion. A proposed release plan is included as an attachment. You are encouraged but not required to complete the proposed release plan. A cover page for the submission of medical records and additional medical information is also included as an attachment to this motion. Again, you are not required to provide medical records and additional medical information. For each document you are attaching to this motion, state whether you request that it be filed under seal because it includes confidential information.

| Document | Attached? | | Request to seal? | |
|---|---|---|---|---|
| Proposed Release Plan | ■ Yes | □ No | □ Yes | ■ No |
| Additional medical information | ■ Yes | □ No | □ Yes | ■ No |
| | □ Yes | | □ Yes | □ No |
| | □ Yes | | □ Yes | □ No |

Page 5 of 6

## V.    REQUEST FOR APPOINTMENT OF COUNSEL

I do not have an attorney and I request an attorney be appointed to help me.

■ Yes

☐ No

## VI.    MOVANT'S DECLARATION AND SIGNATURE

For the reasons stated in this motion, I move the court for a reduction in sentence (compassionate release) under 18 U.S.C. § 3582(c)(1)(A). I declare under penalty of perjury that the facts stated in this motion are true and correct.

8/14/2025

Date

Signature

Kifano Jordan

Name

86333-054

Bureau of Prisons Register #

FCI Allenwood Med.

Bureau of Prisons Facility

POB 2500, White Deer, PA 17887

Institution's Address

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

## UNITED STATES DISTRICT COURT
### FOR THE
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

KIFANO JORDAN
_____

Write your full name here.

**Case No.** 1:18-cr-00834-2
(write the number of your criminal case)

## PROPOSED RELEASE PLAN
### In Support of Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)

| NOTICE |
| --- |
| The public can access electronic court files. Federal Rule of Criminal Procedure 49.1 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. |

If you provide information in this document that you believe should not be publicly available, you may request permission from the court to file the document under seal. If the request is granted, the document will be placed in the electronic court files but will not be available to the public.

Do you request that this document be filed under seal?

☐ Yes

■ No

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

# PROPOSED RELEASE PLAN

To the extent the following information is available to you, please include the information requested below. This information will assist the U.S. Probation and Pretrial Services Office to prepare for your release if your motion is granted.

## A. Housing and Employment

Provide the full address where you intend to reside if you are released from prison:

Nicole King, 852 Sharon Lane, Westbury, NY 11590

Provide the name and phone number of the property owner or renter of the address where you will reside if you are released from prison:

Nicole King, 852 Sharon Lane, Westbury, NY 11590 @ 929) 456-7294.

Provide the names (if under the age of 18, please use their initials only), ages, and relationship to you of any other residents living at the above listed address:

PK - DOB 3/2/2013
ZK - DOB 4/21/2025
Kids of Nicole King; and cousins of Kifano Jordan

If you have employment secured, provide the name and address of your employer and describe your job duties:

Potential employer is Diaspora Community Services, 921-B East New York Avenue, Brooklyn, NY 11203 as a Community Outreach Specialist.
See Exhibit III A

List any additional housing or employment resources available to you:

Cloud Musix who contact is Navarro W. Gray, the owner and president of CloudMusix, LLC d/b/a "CloudMusix". CloudMusix is an independent record label based out of New Jersey with multiple national and international music recording artists.  Jordan will work as president of A & R (Artists & Repertoire). Contact at www.cloudmusix.com   See Exhibit III B

## ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

### B. Medical needs

Will you require ongoing medical care if you are released from prison?

■ Yes

☐ No

Will you have access to health insurance if released?

■ Yes

☐ No

If yes, provide the name of your insurance company and the last four digits of the policy number. If no, how do you plan to pay for your medical care?

Diaspora Community Services provides health insurance for its employees.

_____

If no, are you willing to apply for government medical services (Medicaid/Medicare)?

☐ Yes

☐ No

Do you have copies of your medical records documenting the condition(s) for which you are seeking release?

■ Yes

☐ No

If yes, please include them with your motion. If no, where are the records located?

See Exhibit II

_____

## ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

Are you currently prescribed medication in the facility where you are incarcerated?

☐ Yes

■ No

If yes, list all prescribed medication, dosage, and frequency:

---

Do you require durable medical equipment (e.g., wheelchair, walker, oxygen, prosthetic limbs, hospital bed)?

☐ Yes

■ No

If yes, list equipment:

---

Do you require assistance with self-care such as bathing, walking, toileting?

☐ Yes

■ No

If yes, please list the required assistance and how it will be provided:

---

Do you require assisted living?

☐ Yes

■ No

## ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

If yes, please provide address of the anticipated home or facility and the source of funding to pay for it.

_____

Are the people you are proposing to reside with aware of your medical needs?

■ Yes

☐ No

Do you have other community support that can assist with your medical needs?

☐ Yes

■ No

Provide their names, ages, and relationship to you. If the person is under the age of 18, please use their initials only:

_____

Will you have transportation to and from your medical appointments?

■ Yes

☐ No

Describe method of transportation:

Nicole King will provide transportation to medical appointments until Jordan is able to obtain a vehicle of his own.

_____

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

## SIGNATURE

I declare under penalty of perjury that the facts stated in this attachment are true and correct.

$8/14/2025$

Date

Signature

Kifano Jordan

Name

86333-054

Bureau of Prisons Register #

FCI Allenwood Med.

Bureau of Prisons Facility

POB 2500, White Deer, PA 17887

Institution's Address

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

# UNITED STATES DISTRICT COURT
## FOR THE
SOUTHERN ____ DISTRICT OF NEW YORK ____

UNITED STATES OF AMERICA

**Case No.** 1:18-cr-00834-2 ____

v.

(write the number of your criminal case)

KIFANO JORDAN
_____

Write your full name here.

**MEDICAL RECORDS AND ADDITIONAL MEDICAL INFORMATION**
**In Support of Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)**

---

### NOTICE

The public can access electronic court files. Federal Rule of Criminal Procedure 49.1 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

---

If you attach documents to this form that you believe should not be publicly available, you may request permission from the court to file those documents under seal. If the request is granted, the documents will be placed in the electronic court files but will not be available to the public.

Do you request that the attachments to this document be filed under seal?

☐ Yes

■ No

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

## MEDICAL RECORDS AND ADDITIONAL MEDICAL INFORMATION

To the extent you have medical records or additional medical information that support your motion for compassionate release, please attach those records or that information to this document.

### SIGNATURE

I declare under penalty of perjury that the facts stated in this attachment are true and correct.

8/14/2025
Date

Signature

Kifano Jordan
Name

86333-054
Bureau of Prisons Register #

FCI Allenwood Med.
Bureau of Prisons Facility

POB 2500, White Deer. PA 17887
Institution's Address

Name: JORDAN, Kifano
Reg. No.: 86333-054
Unit: 3B
Page 1

---

### Inmate Request to Staff Response

This is in response to your April 28, 2025, Inmate Request to
Staff, wherein you request a Compassionate Release/Reduction in
Sentence (RIS) due to. Specifically, you site extraordinarily
difficult conditions and lockdowns caused by staffing shortages,
your medical condition and your rehabilitation.

Title 18 of the United States Code, section 3582(c)(1)(A),
allows a sentencing court, on motion of the Director of the BOP,
to reduce a term of imprisonment for extraordinary or compelling
reasons. BOP Program Statement No. 5050.50, Compassionate
Release/Reduction in Sentence: Procedures for Implementation of
18 U.S.C. §§3582(c)(1)(A) and 4205(g), provides guidance on the
types of circumstances that present extraordinary or compelling
reasons, such as the inmate's terminal medical condition;
debilitated medical condition; status as a "new law" elderly
inmate, an elderly inmate with medical conditions, or an "other
elderly inmate"; the death or incapacitation of the family
member caregiver of the inmate's child; or the incapacitation of
the inmate's spouse or registered partner. Your request has
been evaluated consistent with this general guidance.

Your request for Compassionate Release/RIS has been reviewed.
Our records indicate you are 43 years old. You have not been
diagnosed with a terminal medical condition, and you are not
disabled or unable to perform activities of daily living. Your
condition does not diminish your ability to function in a
correctional environment. Based on your current medical
conditions, early release from your sentence is not warranted.

Based on the above information, your request for Compassionate
Release/RIS is denied. If you are not satisfied with this
response to your request, you may appeal this decision through
the Administrative Remedy Process.

05.13.25
Date

M. Arviza
Warden

Exhibit I

 Outlook

## ***Request to Staff*** JORDAN, KIFANO, Reg# 86333054, ALM-C-B

From ~^! JORDAN, ~^!KIFANO <86333054@inmatemessage.com>
Date Mon 4/28/2025 10:49 AM

To: Ms.Maris
Inmate Work Assignment: safety

***ATTENTION***

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.
ff9c4c3d-08a6-4091-af22-3bff898f6f4c
Your response must come from the departmental mail box.  Responses from personal mailboxes WILL NOT be delivered to the inmate.

***Inmate Message Below***


I would like a copy of my medical records and specifically anything that states my diagnosis of pancreatitis and all procedures that I underwent in this facility please . Thank you in advance for your help in this matter .

$Exhibit \ II$

Jordan, Kifano (MRN 6456983) DOB: 04/14/1982                    Encounter Date: 04/22/2024

Fablan, Lauren E, PA-C (Physician Assistant -
Certified)
**Progress Notes**                                                    Gastroenterology

Subjective:
Kifano Jordan is a 42 year old male.
**Chief Complaint**
Patient presents with
• Follow Up

After connecting through televideo, patient was verified with two unique identifiers. Patient (or authorized legal representative) was then informed that this was a Telemedicine visit and that the exam was being conducted confidentially over secure lines. My office door was closed. No one else was in the room with me. Patient acknowledged consent and understanding of privacy and security of the Telemedicine visit and gave permission to have a telemedicine prison staff nurse or guards as appropriate, stay in the room in order to assist with the history and to conduct the exam if needed. I informed the patient that I have reviewed their record in Epic and presented the opportunity for them to ask any questions regarding the visit today. The patient agreed to participate.

HPI: Patient presents for follow-up on a history of pancreatitis, chronically mildly elevated amylase as lipase. He historically has been followed by Jennifer reese CRNP. Has his last visit she recommended proceeding with an EGD and endoscopic ultrasound to further evaluate the upper GI tract as well as the pancreas. Mainly due to the ongoing mild elevation in his amylase and lipase levels. Thankfully the patient has felt clinically well for a number of years. Records indicate the last episode of pancreatitis to be around 2017 or 2018.

EGD and EUS were performed on January 18th at Geisinger Medical Center Danville. EGD revealed a normal esophagus, stomach and duodenum. Routine gastric biopsies were unremarkable and negative for H. pylori. Endoscopic ultrasound revealed a normal pancreas with no lesions, calcifications or cysts seen. Normal pancreatic and common bile duct. A hyperechoic lesion was noted in the left lobe of the liver, measuring 16 x 15 mm. CT with and without contrast in October of 2019 at an outside facility noted two hemangiomas versus cysts in the liver. CT without contrast in October of 2023 noted no abnormalities within the liver, but again this was without contrast.

Currently, the patient states that he feels well. He has not experiencing any abdominal discomfort, nausea or vomiting. He states it has been a number of years since he experienced anything suggestive of an episode of pancreatitis. Lab work in February showed an amylase level of 184 and a lipase level of 134.

No current outpatient medications on file.

No current facility-administered medications for this visit.

**Past Medical History:**
Diagnosis                                                           Date
• Chronic pancreatitis (HCC)
• Hyperlipidemia
• Pancreatitis
• Prediabetes

**Past Surgical History:**
Procedure                                              Laterality    Date
• EGD, W/ENDOSCOPIC US                                 N/A           1/18/2024

Jordan, Kifano (MRN 6456983) DOB: 04/14/1982

Encounter Date: 04/22/2024
Fabian, Lauren E, PA-C (Physician Assistant - Certified)

**Progress Notes (continued)**                                                                 Gastroenterology

*ESOPHAGOGASTRODUODENOSCOPY (EGD), FLEXIBLE, TRANSORAL, ENDOSCOPIC ULTRASOUND performed by Khara, Harshit S, MD at ENDOSCOPY GMC*
- NONE

Review of patient's allergies indicates:

Allergen                                                                      Reactions
- Reglan [Metoclopramide]

No family history on file.
No family status information on file.

**Social History**

Socioeconomic History
- Marital status:                        Unknown
     Spouse name:                         Not on file
- Number of children:                 Not on file
- Years of education:                 Not on file
- Highest education level:          Not on file
Occupational History
- Not on file
Tobacco Use
- Smoking status:                       Not on file
- Smokeless tobacco:               Not on file
Substance and Sexual Activity
- Alcohol use:                             Not on file
- Drug use:                                  Not on file
- Sexual activity:                         Not on file
Other Topics                                Concern
- Not on file
Social History Narrative
- Not on file

**Social Determinants of Health**

Financial Resource Strain: Not on file
Food Insecurity: Not on file
Transportation Needs: Not on file
Physical Activity: Not on file
Stress: Not on file
Social Connections: Not on file
Intimate Partner Violence: Not on file
Housing Stability: Not on file

Review of Systems:
Constitutional ROS: No change in weight, No weakness, No fatigue, and No fevers, sweats, or chills
Pulmonary ROS: No cough, sputum, or hemoptysis, No wheezing, No rales, No shortness of breath, and No recent change in breathing
Cardiovascular ROS: No chest pain, No shortness of breath, No dyspnea on exertion, No orthopnea, No

Jordan, Kifano (MRN 6456983) DOB: 04/14/1982                    Encounter Date: 04/22/2024
                                                    Fabian, Lauren E, PA-C (Physician Assistant -
                                                                                  Certified)
**Progress Notes (continued)**                                          Gastroenterology

paroxysmal nocturnal dyspnea, No edema, No palpitations, and No syncope
Gastrointestinal ROS: No abdominal pain, No change in bowel habits, No significant heartburn, No significant change in appetite, No nausea, vomiting, diarrhea, or constipation, No hematemesis, No blood in stools or black tarry stools, No abdominal bloating or early satiety, and No dysphagia
Musculoskeletal/Extremities ROS: No pain, redness or swelling on the joints

OBJECTIVE:

Physical Exam:
BP 117/80 | Pulse 66 | Ht 1.854 m (6' 1") | Wt 93.9 kg (207 lb) | BMI 27.31 kg/m² | BSA 2.2 m²
General: alert, healthy, and no distress

Assessment:
**History of chronic pancreatitis (Primary)**

**Liver lesion**

Plan: The patient and I reviewed the results of his EGD as well as endoscopic ultrasound in detail. Thankfully very normal imaging of the pancreas with no concerning abnormalities, no indication of chronic pancreatitis. Also no pathology within the stomach which could explain the elevated amylase and lipase. We discussed his amylase and lipase levels may simply be his normal range. But again, very reassuring that the endoscopic ultrasound does not reveal any abnormalities within his pancreas or ducts.

In terms of the hyperechoic lesion in the left lobe of the liver these most likely represents the cysts or hemangiomas seen on imaging several years ago. However I do not have that imaging study to confirm location or size. I therefore recommend a follow-up on this lesion with an MRI of the liver in June or July. This would be to confirm stability and hopefully clarify was specifically this lesion looks to be. Again, I I suspect this to be benign but I do feel additional imaging is warranted.

Follow up in 6 months.

Lauren E Fabian, PA-C



**Geisinger Medical Center**

86333-054

| | | | |
|---|---|---|---|
| **Patient Name:** | Kifano Jordan | **Procedure Date:** | 1/18/2024 11:36 AM |
| **MRN:** | 6456983 | **Account Number:** | 310097150631 |
| **Date of Birth:** | 4/14/1982 | **Admit Type:** | Outpatient |
| **Age:** | 41 | **Room:** | Endo - Room 7 |
| **Gender:** | Male | **Note Status:** | Finalized |

**Procedure:** Upper GI endoscopy

**Indications:** Pancreatitis. Abdominal pain. History of pancreatitis. Assess with EGD + EUS.

**Providers:** Harshit S. Khara, MD (Doctor), Pranav Dineshkumar Patel (Fellow), Ashley Zajac, LPN, Johanna Brocious, RN

**Patient Profile:** This is a 41 year old male. Refer to note in patient chart for documentation of history and physical.

**Referring MD:** Brian O. Buschman, Jennifer Reese, CRNP

**Medicines:** Monitored Anesthesia Care

**Complications:** No immediate complications.

**Procedure:** Pre-Anesthesia Assessment:
- Pre-Anesthesia Assessment:
- Prior to the procedure, a History and Physical was performed, and patient medications, allergies and sensitivities were reviewed. The patient's tolerance of previous anesthesia was reviewed.
- The risks and benefits of the procedure and the sedation options and risks were discussed with the patient. All questions were answered and informed consent was obtained.
- Patient identification and proposed procedure were verified prior to the procedure by the physician, the nurse, the anesthetist and the technician. The procedure was verified in the endoscopy suite.
- See pre-anesthesia H&P in EPIC.



**Upper Gastrointestinal Tract**

- The medication list for this patient has been reviewed prior to the procedure and has been determined that the patient may proceed with the planned study. Any medication changes made as a result of the findings of this procedure have been discussed with the patient and/or representative at the time of discharge from the department.
- Immediately prior to administration of medications, the patient was re-assessed for adequacy to receive sedatives.
- After obtaining informed consent, the endoscope was passed under direct vision. All instruments were visually inspected immediately before and after removal from the patient to ensure they are fully intact.
- Throughout the procedure, the patient's blood pressure, pulse, and oxygen saturations were monitored continuously.
- The supervising physician was present for the entire procedure from scope insertion until scope withdrawal.
After obtaining informed consent, the endoscope was passed under direct vision. All instruments were visually inspected immediately before and after removal from the patient to ensure they are fully intact.
Throughout the procedure, the patient's blood pressure, pulse, and oxygen saturations were monitored continuously. The GIF-HQ190 Endoscope (2510302) was introduced through the mouth, and advanced to the second part of duodenum.

**Findings & Specimens:**

The examined esophagus was normal.

The Z-line was regular and was found 42 cm from the incisors.

The gastroesophageal flap valve was visualized endoscopically and classified as Hill Grade II (fold present, opens with respiration).

*Geisinger Medical Center*

| | | | |
|---|---|---|---|
| **Patient Name:** | Kifano Jordan | **Procedure Date:** | 1/18/2024 11:36 AM |
| **MRN:** | 6456983 | **Account Number:** | 310097150631 |
| **Date of Birth:** | 4/14/1982 | **Admit Type:** | Outpatient |
| **Age:** | 41 | **Room:** | Endo ~ Room 7 |
| **Gender:** | Male | **Note Status:** | Finalized |

The entire examined stomach was normal. Biopsies were taken with a cold forceps for Helicobacter pylori testing. Verification of patient identification for the specimen was done by the physician, nurse and technician using the patient's name, birth date and medical record number. The pathology specimen was placed into Bottle A.

The examined duodenum was normal.

**Add'l Images:**



| | |
|---|---|
| **1** Middle Third of the Esophagus | **2** Lower Third of the Esophagus |
| **3** Gastroesophageal Junction | **4** Gastroesophageal Junction |
| **5** Gastric Body | **6** Gastric Body |
| **7** Gastric Antrum | **8** Gastric Body |
| **9** Pre-pyloric Stomach | **10** Duodenal Bulb |
| **11** 2nd Portion of the Duodenum | **12** 2nd Portion of the Duodenum |



**13** 2nd Portion of the Duodenum

**Impression:**    41 year old Male with PMH of pancreatitis having abnormal imaging with liver hemangioma, elevated lipase and amylase in the past presented for assessment with EGD+EUS for pancreas screening:

- Normal esophagus. Regular Z line.
- Gastroesophageal flap valve classified as Hill Grade II (fold present, opens with respiration).
- Normal stomach. Biopsied.
- Normal examined duodenum.

**Recommendation:**    - Await pathology results.



Geisinger Medical Center

| | | | |
|---|---|---|---|
| **Patient Name:** | Kifano Jordan | **Procedure Date:** | 1/18/2024 11:36 AM |
| **MRN:** | 6456983 | **Account Number:** | 310097150631 |
| **Date of Birth:** | 4/14/1982 | **Admit Type:** | Outpatient |
| **Age:** | 41 | **Room:** | Endo - Room 7 |
| **Gender:** | Male | **Note Status:** | Finalized |

- Perform an upper endoscopic ultrasound (UEUS) today, to follow.
- Discharge patient to facility (ambulatory).
- Return to referring physician as previously scheduled.

Harshit S. Khara, MD
Finalized Date: 1/18/2024 12:34:47 PM
This report has been signed electronically.

Pranav Dineshkumar Patel,

**Estimated Blood Loss:** Estimated blood loss was minimal.

F/u in place
S. Gosa, PAC
S. Gosa, PA-C
JAN 18 2024
FCC Allenwood

87 333-004

**Geisinger Medical Center**

| Patient Name: | Kifano Jordan | Procedure Date: | 1/18/2024 12:21 PM |
|---|---|---|---|
| MRN: | 6456983 | Account Number: | 310097150631 |
| Date of Birth: | 4/14/1982 | Admit Type: | Outpatient |
| Age: | 41 | Room: | Endo - Room 7 |
| Gender: | Male | Note Status: | Finalized |

**Procedure:** Upper EUS

**Indications:** Abnormal abdominal/pelvic CT scan, Elevated amylase, Elevated lipase, Acute recurrent pancreatitis

**Providers:** Harshit S. Khara, MD (Doctor), Pranav Dineshkumar Patel (Fellow), Charlene Witmer, RN, Breanna Hawk, RN

**Referring MD:** Jennifer Reese, CRNP, Brian O. Buschman

**Medicines:** Monitored Anesthesia Care

**Complications:** No immediate complications.

**Procedure:** Pre-Anesthesia Assessment:
- Pre-Anesthesia Assessment:
- Prior to the procedure, a History and Physical was performed, and patient medications, allergies and sensitivities were reviewed. The patient's tolerance of previous anesthesia was reviewed.
- The risks and benefits of the procedure and the sedation options and risks were discussed with the patient. All questions were answered and informed consent was obtained.
- Patient identification and proposed procedure were verified prior to the procedure by the physician, the nurse, the anesthetist and the technician. The procedure was verified in the endoscopy suite.
- See pre-anesthesia H&P in EPIC.
- The medication list for this patient has been reviewed prior to the procedure and has been determined that the patient may proceed with the planned study. Any medication changes made as a result of the findings of this procedure have been discussed with the patient and/or representative at the time of discharge from the department.
- Immediately prior to administration of medications, the patient was re-assessed for adequacy to receive sedatives.
- After obtaining informed consent, the endoscope was passed under direct vision. All instruments were visually inspected immediately before and after removal from the patient to ensure they are fully intact.
- Throughout the procedure, the patient's blood pressure, pulse, and oxygen saturations were monitored continuously.
- The supervising physician was present for the entire procedure from scope insertion until scope withdrawal.
After obtaining informed consent, the endoscope was passed under direct vision. All instruments were visually inspected immediately before and after removal from the patient to ensure they are fully intact.
Throughout the procedure, the patient's blood pressure, pulse, and oxygen saturations were monitored continuously. The GF-UC140P-AL5 Endosonoscope (1300124) was introduced through the mouth, and advanced to the second part of duodenum. The upper EUS was accomplished without difficulty. The patient tolerated the procedure well.

**Findings & Specimens:**

ENDOSONOGRAPHIC FINDING:

There was no sign of significant endosonographic abnormality in the entire pancreas. The pancreatic duct measured up to 2 mm in diameter. No pathologic lymphadenopathy, no masses, no cysts, no calcifications, the pancreatic duct was well visualized from ampulla to tail, the pancreatic duct was regular in contour.

There was no sign of significant endosonographic abnormality in the common bile duct. The maximum diameter of the duct was 3 mm.

Page 1

*Geisinger Medical Center*

| | | | |
|---|---|---|---|
| **Patient Name:** | Kifano Jordan | **Procedure Date:** | 1/18/2024 12:21 PM |
| **MRN:** | 6456983 | **Account Number:** | 310097150631 |
| **Date of Birth:** | 4/14/1982 | **Admit Type:** | Outpatient |
| **Age:** | 41 | **Room:** | Endo - Room 7 |
| **Gender:** | Male | **Note Status:** | Finalized |

A lesion was found in the left lobe of the liver. The lesion was hyperechoic. The lesion measured 16 mm by 15 mm in maximal cross-sectional diameter.

There was no sign of significant endosonographic abnormality in the left adrenal gland.

No lymphadenopathy seen.

**Impression:**    41 year old Male with PMH of pancreatitis having abnormal imaging with liver hemangioma, elevated lipase and amylase in the past presented for assessment with EGD+EUS for pancreas screening:

- There was no sign of significant pathology in the entire pancreas. No mass lesions, calcification, or cysts seen. Normal PD.
- There was no sign of significant pathology in the common bile duct.
- A lesion was found in the left lobe of the liver. The lesion was hyperechoic. The lesion measured 16 mm by 15 mm.
- Endosonographic images of the left adrenal gland were unremarkable.

**Recommendation:**    - Return to GI clinic as previously scheduled.
- Discharge patient back to facility.

*Hskhara*

_____          _____

Harshit S. Khara, MD                                   Pranav Dineshkumar Patel,
Finalized Date: 1/18/2024 12:36:05 PM
This report has been signed electronically.
**Estimated Blood Loss:**    Estimated blood loss: none.

Geisinger Fax Server 2/8/2023 2:59:50 PM  PAGE   2/004  Fax Server

# 86333-054

Jordan, Kifano (MRN 6456983) DOB: 04/14/1982

Encounter Date: 02/08/2023

Jennifer Mae Reese, CRNP (Certified
Registered Nurse Practitioner)
**Progress Notes**                                                                                    Gastroenterology

Geisinger Gastroenterology, Montoursville
10 Choate Cir
Montoursville PA 17754
Phone: 570-368-5566
Fax: 570-368-5564

Kifano Jordan

After connecting through televideo, patient was verified with two unique identifiers. Patient (or authorized legal representative) was then informed that this was a Telemedicine visit and that the exam was being conducted confidentially over secure lines. My office door was closed. No one else was in the room with me. Patient acknowledged consent and understanding of privacy and security of the Telemedicine visit and gave permission to have a telemedicine prison staff nurse or guards as appropriate, stay in the room in order to assist with the history and to conduct the exam if needed. I informed the patient that I have reviewed their record in Epic and presented the opportunity for them to ask any questions regarding the visit today. The patient agreed to participate.

**History of Present Illness:**

Kifano Jordan is a 40 year old male, inmate at Allenwood FCC, he presents for follow-up.

History of chronic pancreatitis. He initially had episodes of pancreatitis in 2015. He reported a history of multiple episodes without a clear etiology, although we had no records in that regard. He admitted to a very poor diet at that time, very high in fat. He denied any history of heavy alcohol use or abuse. There is no family history of pancreatitis or pancreatic cancer. The last imaging was in October of 2019 at an outside facility. CT of the abdomen with and without contrast noted 2 hemangiomas versus cysts in the liver. The pancreas is listed as unremarkable as is the spleen.
There's been a mild elevation in amylase and lipase have been presents for years. Mild elevation in alk-phos and produced a normal GGT in March 2022.

Today he reports he remains asymptomatic. No nausea, vomiting, abdominal pain or unintentional weight loss. Following last office visit in May last year amylase and lipase continued to titrate upwards. Most recently in October lipase WNL.

**Allergies:**
Review of patient's allergies indicates:
Allergen ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ Reactions ▨▨▨▨▨▨▨▨▨▨▨▨▨▨
• Reglan [Metoclopramide]

**Medications:**
Current Outpatient Medications
Medication ▨▨▨▨▨▨▨▨▨▨▨ Sig ▨▨▨▨▨▨▨▨▨▨▨▨▨ Dispense ▨▨▨ Refill ▨▨▨
• Gemfibrozil 600 MG Oral Tablet      Take 600 mg by mouth
  (Lopid)                             2 times a day.

No current facility-administered medications for this visit.

Jordan, Kifano (MRN 6456983) DOB: 04/14/1982

Encounter Date: 02/08/2023
Jennifer Mae Reese, CRNP (Certified
Registered Nurse Practitioner)
Gastroenterology

**Progress Notes (continued)**

**Family History:**
No family history on file.

**Social History:**
Social History

| Tobacco Use | | |
| --- | --- | --- |
| • Smoking status: | Not on file | |
| • Smokeless tobacco: | Not on file | |
| Substance Use Topics | | |
| • Alcohol use: | Not on file | |
| • Drug use: | Not on file | |

**Past Medical History:**
Past Medical History:

| Diagnosis | | Date |
| --- | --- | --- |
| • Chronic pancreatitis (HCC) | | |
| • Hyperlipidemia | | |
| • Pancreatitis | | |

**Past Surgical History:**
Past Surgical History:

| Procedure | Laterality | Date |
| --- | --- | --- |
| • NONE | | |

**Review of Systems:**
Otherwise negative unless noted in HPI

**Vital Signs:**
BP 133/80 | Pulse 88 | Ht 1.854 m (6' 1") | Wt 92.1 kg (203 lb) | BMI 26.78 kg/m² | BSA 2.18 m²

**Physical Examination:**
Constitutional: Patient appears well and in no acute distress.
CNS: Alert, awake or oriented x 3.

**Assessment and Plan:**

**History of chronic pancreatitis**
**History of elevated amylase and lipase**
Following last office visit May 2022 he did have a further elevation in amylase and lipase in June. Most recent labs revealed a lipase within normal limits. Patient's with chronic pancreatitis can produce low to normal lipase levels. Recommend CT abdomen to evaluate pancreas for potential changes in the setting of chronic pancreatitis and ensure no cyst/lesion development in the setting of chronic pancreatitis. If imaging is

Jordan, Kifano (MRN 6456983) DOB: 04/14/1982

Encounter Date: 02/08/2023
Jennifer Mae Reese, CRNP (Certified
Registered Nurse Practitioner)

**Progress Notes (continued)**

Gastroenterology

consistent with chronic pancreatitis consider checking IGG subclass for potential autoimmune pancreatitis.

Check labs every 6 months.

Follow-up in 4 months.

This note was dictated using Fluency voice recognition software. The content was reviewed for accuracy, but minor grammatical or word replacement errors may still exist.

Jennifer M Reese, CRNP
2/8/2023
8:28 AM



**05/19/2025**

**Nicole King**
852 Sharon Lane
Westbury, NY 11590

**To Whom It May Concern,**

I Nicole King am writing to offer my full support and sponsorship for my family member, **Kifano Jordan**, as he reintegrates into the community. I am committed to providing both stable housing and a supportive environment that will allow him to successfully rebuild and contribute positively to society.

**Household and Housing Plan:**
Kifano Jordan will reside with me at my home located at:

**852 Sharon Lane**
**Westbury, NY 11590**

This residence is a safe and stable environment, fully suitable for his reintegration. My household currently includes myself and my two children:

- **P.K.**, Date of Birth: 03/02/2013
- **Z.K.**, Date of Birth: 04/21/2016

As head of household, I will ensure that Kifano Jordan is welcomed into a structured, family-centered setting that promotes accountability, personal development, and community connection.

**Employment Plan:**
To support his reentry and self-sufficiency, Kifano Jordan is being considered for

*Exhibit III - A*



employment with **Diaspora Community Services** in the role of **Community Outreach Specialist**.

**Position Title:** Community Outreach Specialist
**Agency:** Diaspora Community Services
**Contact:** Nicole King **Associate Director of Residential Service** – (929) 456-7294

**Key Responsibilities Include:**

- Planning and leading youth-focused outreach programs such as workshops, mentorships, and recreational activities
- Partnering with schools, community centers, and local service agencies
- Engaging with youth and families to promote trust, participation, and empowerment
- Identifying challenges facing at-risk youth and advocating for necessary resources and support

This opportunity provides a meaningful path for personal growth while making a positive impact on the community.

As his sponsor, I will provide ongoing emotional, logistical, and household support to ensure a successful transition. I am confident that with this foundation, Kifano Jordan will reestablish himself as a productive and contributing member of society.

Please feel free to contact me should you require any further information.

Sincerely,

*Nicole King*



May 13, 2025

RE: Letter of Promise to Employ Kifano Jordan

To Whom It May Concern

My name is Navarro W. Gray, the owner and president of CloudMusic, LLC d/b/a "CloudMusix". We are an independent record label based out of New Jersey with multiple national and international music recording artists on our roster. We have been operating successfully since 2018. Originally, we were funded by Virgin Music Group a division of Universal Music Group. Once our contract ended, we decided to partner up with Vydia for the distribution of our artists. You can find information about our artists and services at www.cloudmusix.com

It is our understanding that Mr. Jordan has taken full accountability for his actions and is serving a term of incarceration. Prior to being incarcerated he was very active in the entertainment industry. He has put various artists and producers together to make music and has a keen eye for developing talent. Once Mr. Jordan is released, he will be employed as the President of A&R (Artists & Repertoire) at CloudMusix. His duties would include, but not be limited to, managing the interns, overseeing project management for recording artists and finding new talent. He will also be responsible for managing account coordinators to make sure they are speaking to the recording artists to ensure they meet their music delivery deadlines. Mr. Jordan will receive a monthly stipend along with a commission. His commission will be a percentage of income (royalties) for each artist that we successfully sign under his recommendation. Upon contract renewal and satisfactory performance, Mr. Jordan will be offered a salaried position.

If you have any questions or would like to discuss. Please do not hesitate to contact our office.

Truly Yours

By: _____
Navarro W. Gray o/b/o Cloudmusix

1

Exhibit III-B



# WORKFORCE COMPETENCY CREDENTIAL



This credential certifies that

# KIFANO JORDAN

has exceeded national standards in

## Plumbing

as verified by NOCTI's nationally-accredited process*

Awarded on **October 11th, 2022**

# NOCTI

John A. Foster, Ph.D.
President/CEO
NOCTI

Expires: October 11, 2025

*NOCTI has earned full accreditation from the International Certification Accreditation Council (ICAC) ensuring
that a neutral party has properly evaluated the organization and signifies that NOCTI's CTE assessments follow
the best international industry practices and standards as outlined for accrediting bodies in ISO 17024.

Exhibit III

# Office of the State Superintendent of Education

This Certifies That

## KIFANO JORDAN

having satisfactorily completed the Tests of General Educational Development
with scores comparable to those of high school graduates,
is hereby awarded this

## High School Equivalency Credential

and is entitled to all the Rights and Privileges appertaining thereto.
In witness whereof our names are hereto affixed, this the
17th Day of March, 2020

**Hanseul Kang**
State Superintendent of Education

**Antoinette S. Mitchell, Ph.D.**
Assistant Superintendent
Postsecondary and Career Education

**Philip L. PremDas**
GED Administrator



District of Columbia
Office of the State
Superintendent of Education



★ ★ ★ GOVERNMENT OF THE DISTRICT OF COLUMBIA
**MURIEL BOWSER, MAYOR**



# CERTIFICATE OF COMPLETION

Awarded to

## Kifano Jordan

For successfully completing
### Forklift Operations & Safety Training
*February 1, 2023*

*Completion of 6 hours of classroom instruction with a written examination conducted in accordance with OSHA 29 CFR 1910.178 by a Lift, Inc. certified instructor.*

Evaluation Date: February 1, 2023

Evaluated by: 

*Training Instructor, B. Young, White Deer, PA*



*Certificate of Completion*

# Jordan Kifano

*Has successfully completed training for*
*Fire Extinguisher Maintenance and Inspection*
*In accordance with NFPA 10*



*Jordan Lepley*
**Jordan Lepley**
**Safety Compliance Specialist**

*Matthew Johnson*
**Matthew Johnson**
**Environment Safety**
**Compliance Administrator**

# *Certificate of Completion*

**Presented to**

**Kifano Jordan**

**For successfully completing the**

**Drug Abuse Education Course**

The Drug Abuse Education Course is a minimum of 12 hours.  The goal of this program is to help
the offender to make an accurate evaluation of the consequences of his/her alcohol/drug
use and consider the need for treatment.

**8/2/2021**

**Drug Abuse Treatment Specialist**                    **Date**

**FCI Allenwood**



# Certificate of Completion

THIS ACKNOWLEDGES THAT

## Kifano Jordan

HAS SUCCESSFULLY COMPLETED PHASE ONE OF THE NATIONAL PARENTING PROGRAM
AT FCC ALLENWOOD

L. BASTIAN,
SPECIAL POPULATION
PROGRAM COORDINATOR

September 30,2024

DATE



# Certificate of Completion

THIS ACKNOWLEDGES THAT

## Kifano Jordan

HAS SUCCESSFULLY COMPLETED PHASE TWO (PIP) OF THE NATIONAL PARENTING PROGRAM
AT FCC ALLENWOOD

L. BASTIAN,
SPECIAL POPULATION
PROGRAM COORDINATOR

September 30, 2024

DATE



Kifano Jordan #86333-054
Allenwood F.C.I. Medium
P.O. BOX 2000
White Deer P.A. 17887



RECEIVED
AUG 22 2025
CLERK'S OFFICE
S.D.N.Y.

USMAD
SDNY

Criminal
DOCKeting

Thurgood Marshall U.
Clerk of Court Southern
40 Foley Square
New York, N.Y. 1000[5]



**FCI Allenwood White Deer, PA**

8-15-25

**DATE**

The Enclosed letter was processed through special
mailing procedures for forwarding to you. The letter has
been neither opened nor inspected if the writer raises a
question or problem over which this facility has
jurisdiction, you may wish to return the material for further
information or clarification. If the writer encloses
correspondence for forwarding to another addressee,
please return the enclosure to the above address.

LEGAL M