UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

KIFANO JORDAN,

Defendant.

S7 18 Cr. 834 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This decision resolves a *pro se* motion for compassionate release by defendant Kifano Jordan pursuant to 18 U.S.C. § 3582(c)(1). For the reasons that follow, the Court denies the motion.

I. **Background**

The background to Jordan's present motion is set out in detail in materials including Jordan's August 21, 2019 presentence report, Dkt. 262 ("PSR"), the Government's August 30, 2019 sentencing letter, Dkt. 288 ("G. Sent'g Ltr."), the transcript of Jordan's September 6, 2019 sentencing, Dkt. 329 ("Sent'g Tr."), the Court's July 8, 2020 decision denying his initial compassionate release motion, Dkt. 516 ("CR Decision"), Jordan's present compassionate release motion, filed August 26, 2025, Dkt. 711 ("CR Mot."), and the Government's September 10, 2025 memorandum in opposition to that motion, Dkt. 713 ("G. Mem."), and the transcript of the 2019 trial of Jordan's co-defendants, Anthony Ellison and Aljermiah Mack.

A. **Offense Conduct**

In brief, Jordan was a high-ranking member of the Nine Trey Gangsta Bloods ("Nine Trey"), a violent set of the Bloods gang that was charged in this case as a racketeering enterprise. *See* G. Sent'g Ltr. at 1. Nine Trey was divided into "Street Lineup" and "Prison Lineup" sets.

1

*Id.* Jordan held the second highest ranking position in the Street Lineup. *Id.* He participated in multiple acts of violence in connection with Nine Trey. *Id.* These included a November 2017 assault of a rival gang member; a March 20, 2018 shooting near Times Square; an April 3, 2018 armed robbery in midtown Manhattan; two shootings on April 21, 2018, one in which Jordan shot at two individuals and another occurring inside the Barclays Center in Brooklyn; a June 2, 2018 shooting at a rival gang member; a July 16, 2018 shooting in Brooklyn; and an October 26, 2018 assault that resulted in a fellow Nine Trey member getting shot in the stomach. *See id.* at 1–4. Jordan also procured firearms for Nine Trey and dealt heroin. *See id.* at 4.

### B.    Guilty Plea and Sentencing

On March 28, 2019, Jordan pled guilty to one count of using a firearm in furtherance of a crime of violence, and one count of possessing a firearm, which was brandished and discharged, in furtherance of a crime of violence. *See* Dkts. 161 (plea transcript), 295 (judgment).

On September 6, 2019, the Court sentenced Jordan to the mandatory minimum term of 180 months (15 years) imprisonment, followed by five years' supervised release. *See* Sent'g Tr. at 25; Dkt. 295. As reviewed in greater depth below, the Court found that sentence supported by multiple 18 U.S.C. § 3553(a) factors, including the interests of just punishment, specific and general deterrence, and protection of the public. *See* Sent'g Tr. at 17–21.

### C.    Initial Compassionate Release Motion

In mid-June 2020, Jordan filed a *pro se* compassionate release motion under 18 U.S.C. § 3582(c), seeking that his remaining period of incarceration be converted into a term of supervised release with the condition of home confinement, in light of the COVID-19 pandemic and his claimed health conditions, including hypertension and stress, which he argued made him more susceptible to the virus's ill effects. *See* Dkt. 501.

On July 8, 2020, the Court denied that motion, noting that although Jordan's pending appeal[1] meant it lacked jurisdiction to grant the motion, it had authority under Federal Rule of Criminal Procedure 37 to reach the merits and deny the motion. *See* CR Decision at 3–4. The Court did so for two independent reasons, while assuming *arguendo* that Jordan's heightened health risk due to COVID-19 supplied extraordinary and compelling reasons to qualify for compassionate release. *Id.* at 6–7. First, the Court could not find, as required for release, that Jordan was "not a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2), given he had participated in multiple shootings and other acts of violence and had a history of violent offenses, *see* CR Decision at 7–8. Second, the Court could not find that the application of the section 3553(a) factors favored early release, in light of the gravity of his crimes, the need for general deterrence, and the substantial portion of his sentence remaining, among other considerations. *Id.* at 8–9.

### D. Current Compassionate Release Motion

On August 26, 2025, Jordan filed the present compassionate release motion. He did not seek immediate release, but rather a reduction in his 180-month sentence to 132 months (11 years) imprisonment. CR Mot. at 3. On September 10, 2025, the Government opposed. G. Mem.

## II. Legal Standard

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that

---

[1] Jordan's conviction and sentence were later affirmed on appeal. *See* Dkt. 686.

3

"extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United States v. Fernandez*, 104 F.4th 420, 427 (2d Cir. 2024).

Originally, section 3582(c)(1)(A) did not permit defendants to initiate compassionate release motions, and required the Bureau of Prisons (BOP) to seek such release on their behalf. *See United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam). Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence, before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act. *See Brooker*, 976 F.3d at 231–34 (quoting 28 U.S.C. § 994(t)). The Second Circuit therefore held that this guidance applied only to "those motions that the BOP has made" and not "to compassionate release motions brought by defendants." *Id.* at 235–36. Thus, through November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the BOP, a district court was not constrained by section 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The

amended guidance from the Commission as to what constitute extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.

The Commission's updated guidance identifies six circumstances that, singly or in combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

- *Medical circumstances of the defendant.* In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, *id.* § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided" in prison and "without which the defendant is at risk of serious health deterioration or death," *id.* § 1B1.13(b)(1)(C). Medical circumstances may also be extraordinary and compelling where the defendant is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency," where "due to personal health risk factors and custodial status," the defendant is at greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D).

- *Age of the defendant.* The defendant's age may support a sentence reduction where he "is at least 65 years old," is "experiencing a serious deterioration" in health due to aging, and has served at least 10 years or 75 percent of his sentence. *Id.* § 1B1.13(b)(2).

- *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. *Id.* § 1B1.13(b)(3).

- *Victim of abuse in custody.* Where the defendant while in custody on the sentence in question was a victim of sexual or physical abuse resulting in serious bodily injury and "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," this may support a sentence reduction. *Id.* § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves, or when considered with the above circumstances, are similar in gravity to those above, such may support a sentence reduction. *Id.* § 1B1.13(b)(5).

- *Unusually long sentence plus change in law.* Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining

5

whether the defendant presents an extraordinary and compelling reason. *Id.* § 1B1.13(b)(6).

As to the defendant's rehabilitation, section 1B1.13 states that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason," but rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* § 1B1.13(d).

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

### III. Discussion

Jordan argues that a combination of circumstances rises to the level of extraordinary and compelling and support his early release under section 3582(c)(1)(A): his chronic pancreatitis; lockdowns at Federal Correctional Institution Allenwood Medium ("FCI Allenwood"), where he is held; and his rehabilitation. *See* CR Mot. at 3–13. Accordingly, he seeks a 48-month reduction in sentence. *Id.* at 3. He argues that such a reduction is supported by the section 3553(a) factors because he has demonstrated "significant post-sentencing rehabilitation efforts" and because "the completion of more than 60%" of his sentence will serve the goal of deterrence. *Id.* at 13.

The Government opposes the motion. It disputes that extraordinary and compelling circumstances are present, noting that the BOP is equipped to attend to Jordan's medical needs and has done so, and supplying BOP medical records refuting Jordan's claims of deficient care. *See* G. Mem. at 6–8. The Government further argues that, even if extraordinary and compelling circumstances were found, the section 3553(a) factors support the sentence imposed based on

Jordan's "prolonged and serious course of conduct" and the danger that he poses to the community. *Id.* at 8–9.[2]

For the following reasons, the Court denies Jordan's motion. It notes, however, that it would entertain such a motion in the future, in the event that Jordan's medical condition evolves in the manner that Jordan predicts, and the BOP's care proves demonstrably inadequate.

### A. Extraordinary and Compelling Circumstances

The Court considers each of the three circumstances adduced by Jordan, and finds that they do not, taken separately or together, rise to the level of extraordinary and compelling such that a reduction in his sentence is warranted.

#### 1. Deteriorating Health

Jordan states that he has been diagnosed with chronic pancreatitis and contends that he has been unable to obtain proper medications or diet modifications for this condition, which causes him "severe abdominal and back pain, along with chronic nausea." CR Mot. at 3–4. For two reasons, Jordan is wrong that his pancreatitis creates extraordinary and compelling circumstances supporting a reduction in sentence.

First, factually, Jordan's BOP medical records[3] refute his claim that the BOP has failed to attend to his medical or dietary needs. *See* G. Mem. at 6–8. As the Government recites, his medical records reflect that Jordan has been seen by gastroenterologists and/or other BOP healthcare providers for his pancreatitis seven times in the past two years. *Id.* at 6 (citing Ex. A at 1–2, 8, 39, 79, 91, 107, 120–21). Other aspects of these records also undermine, or are in

---

[2] The Government does not dispute that Jordan has exhausted his administrative remedies. *See* G. Mem. at 4.

[3] The Government has marked these as Exhibit A ("Ex. A") and filed them under seal.

7

tension with, Jordan's suggestion that he has a medical condition that puts him at serious risk and requires care that is not being provided by the BOP, as required by section 1B1.13(b)(1). These include that (1) at a November 29, 2023 chronic care visit, the provider noted that Jordan "[f]eels good, has no complaints," Ex. A. at 107; (2) at an April 22, 2024 visit, Jordan was seen by a gastroenterologist, whose findings included "[n]ormal imaging of the Pancreas with no concerning abnormalities," *id.* at 78, 91; (3) at a July 24, 2024 visit, Jordan refused a magnetic resonance imaging ("MRI") of his liver, *id.* at 78; (4) at an October 17, 2024 chronic care visit, the provider noted that Jordan "[f]eels good, has no complaints" and "[h]as not had any pancreatitis flares," *id.* at 39; (5) at a July 17, 2025 visit, some six weeks before Jordan's filing of the instant motion, his provider noted that Jordan reported "some abdominal discomfort last month after dietary indiscretion" but "feels good presently," *id.* at 8, and noted that he had discussed with Jordan his "poor commissary choices" and made "specific recommendations" apparently as to Jordan's diet, *id.*; (5) on August 5, 2025, Jordan had a virtual visit with a physician assistant, who noted that Jordan was supposed to follow up with her earlier in the year but did not show for an appointment, *id.* at 71; and (6) on September 2, 2025, Jordan's gastroenterologist noted that Jordan had refused an MRI on July 18, 2025, despite it being recommended, *id.* at 1–2. Moreover, as the Government chronicles, Jordan skipped numerous appointments entirely, having been marked as a no-show for at least 15 scheduled appointments, but meanwhile appeared for an appointment after pulling a muscle during a spin class. G. Mem. at 7 (citation omitted).

Jordan's medical records also do not support his claim that FCI Allenwood medical staff were indifferent to him during an alleged visit on June 13, 2025. *See* CR Mot. at 12. As the Government notes, there are no records of any such visit. And an attorney on the BOP's legal

8

staff, whom the Government tasked with inquiring into this claim, confirmed upon speaking with FCI Allenwood's health services unit that Jordan did not meet with the prison's medical staff that day. *See* G. Mem. at 7–8. The BOP attorney was also notified by Jordan's doctors that Jordan had been referred for a colonoscopy on multiple occasions but had refused to appear for one, a point memorialized in Jordan's medical records. *See id.* at 8 (citing Ex. A at 1, 12, 43, 111).

Finally, although the BOP's records support that Jordan has made poor dietary decisions, they do not support his claim that a dietary regime appropriate for his pancreatitis is inaccessible to him. The Government attaches the BOP's "National Menu," which reflects healthy, low-fat options available for breakfast, lunch and dinner, and which an attorney from the BOP confirmed is followed by FCI Allenwood. *See id.* at 8 (citing Ex. B).

Second, measured against the governing legal standards, Jordan's pancreatitis falls far short of supporting a reduction in sentence. As the Government notes, Jordan's overall BOP medical records do not reflect any material deterioration in his physical condition or claims to that effect by Jordan to doctors. Instead, viewed generously, Jordan's motion for early release more than four years from now appears premised on his projection that his condition by then may have materially declined. That projection, however, is inherently speculative. And Jordan has not shown—and his medical records do not reflect—that he has medical issues that the BOP cannot capably address and will be unable or unwilling to address were they to deteriorate.

The Court thus cannot find, as required for a grant of compassionate release under section 1B1.13(b)(1)(C), that Jordan is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided in prison and without which the defendant is at risk of serious deterioration in health or death." *See, e.g., United States v. Pouryan*, No. 11

9

Cr. 111, 2023 WL 2456503, at *2 (S.D.N.Y. Mar. 9, 2023) (although defendant "does suffer from many of his alleged medical conditions," his medical records "establish that he has received regular treatment and care for those conditions," and thus he "has not demonstrated that the BOP cannot adequately address his medical needs" (citation omitted)); *United States v. Lawrence*, No. 19 Cr. 437, 2022 WL 4000904, at *4 (S.D.N.Y. Sept. 1, 2022) (denying sentence reduction where defendant's "treatment has been sufficient" and he "has not demonstrated that the BOP cannot adequately address his medical needs"); *United States v. Lora*, No. 16 Cr. 44, 2022 WL 1055749, at *4 (S.D.N.Y. Apr. 8, 2022) (similar); *United States v. Mood*, No. 19 Cr. 113, 2021 WL 242482, at *1 (S.D.N.Y. Jan. 25, 2021) (similar); *United States v. Zubkov*, 460 F. Supp. 3d 450, 455 (S.D.N.Y. 2020) (similar); *United States v. Brady*, No. 18 Cr. 316, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (similar).

The Court therefore finds that Jordan's medical conditions do not constitute an extraordinary and compelling circumstance.

### 2. Lockdowns at FCI Allenwood

Jordan also argues that a reduction in sentence is supported by the frequent lockdowns at FCI Allenwood that he has experienced throughout his incarceration and especially during the COVID-19 pandemic. He describes that the lockdowns have at times lasted as long as one-and-a-half months and have impaired his ability to see his loved ones, including his aging father, and his access to prison programming, hot meals, and magazines or books sent by family. *See* CR Mot. at 5–10. Jordan states that this has caused him to "suffer[] needlessly" and made his incarceration "even more difficult." *Id.* at 7, 10.

The Court acknowledges that such lockdowns are deeply regrettable and can take a severe physical and mental toll on incarcerated individuals. They are, however, an unfortunately

10

familiar incident of prison, and Jordan does not identify facts that make the lockdowns extraordinary or compelling as to him in particular. He notes that he has not been able to see his father for seven years, *id.* at 6, but it is not clear to the Court how or why this is attributable to the lockdowns. Without a showing of particular hardship, courts have widely denied compassionate release motions premised on frequent lockdowns. *See, e.g., United States v. Dominguez-Gabriel*, No. 9 Cr. 157, 2025 WL 2295804, at *1 (S.D.N.Y. Aug. 8, 2025) (denying sentence reduction sought on the basis of conditions of confinement, including "frequent and extended lockdowns," that are "closer to the ordinary incidents of incarceration"); *United States v. Sayoc*, No. 18 Cr. 820, 2025 WL 918864, at *2 (S.D.N.Y. Mar. 26, 2025) (same, where defendant's "complaints relate to general conditions, experienced by all inmates at his facility"); *United States v. Farmer*, No. 19 Cr. 427, 2022 WL 47517, at *4 (S.D.N.Y. Jan. 5, 2022) (same).

The cases cited by Jordan do not alter this analysis. In *United States v. Souza*, a district court granted compassionate release based in part on the conditions at FCI Allenwood; however, the defendant there had served more than 75% of his sentence and had demonstrated that his "serious" medical condition was "not being adequately addressed." No. 18 Cr. 83, Dkt. 66, at 3–4 (D.R.I. Feb. 7, 2025). Here, Jordan has served less than half of his sentence and, critically, has not provided persuasive support for his claim of deficient medical treatment. The cases that Jordan cites in which courts granted compassionate release during the COVID-19 pandemic are also easily distinguished. Those particular defendants had medical conditions that put them at heightened risk from the virus, and/or had some individualized circumstances that made the pandemic conditions of confinement unusually harsh for them. *See, e.g., United States v. Rodriguez*, 492 F. Supp. 3d 306, 310 (S.D.N.Y. 2020) (granting reduction in sentence where defendant "suffer[ed] from a number of documented health conditions that constitute

11

extraordinary and compelling reasons for a sentence reduction"); *United States v. Oquendo*, No. 13 Cr. 357, 2023 WL 199609, at *5 (S.D.N.Y. Jan. 17, 2023) (same, where defendant's medical issues "resulted in more deleterious consequences to his health than were faced by other federal inmates during this period"). That is not the case here.

Accordingly, the Court finds that Jordan's conditions of confinement do not constitute a circumstance "similar in gravity" to the "reasons described in paragraphs (1) through (4)" of the policy statement. U.S.S.G. § 1B1.13(b)(5). They therefore do not provide a basis for a reduction in his sentence.

### 3. Rehabilitation

Finally, Jordan argues that his rehabilitation merits a reduction in his sentence. He states that, as a result of being in prison during the pandemic, he now appreciates his mortality "front and center in a way I have never experienced." CR Mot. at 1. He states that he has resolved that "no matter my situation I would make a conscious effort to change and I have." *Id*. He states that he no longer associates himself with "'gang or street' culture" and that he is today "a better person." *Id*. Jordan also notes that, since being incarcerated, he has earned a GED; completed vocational, educational, and release-preparation courses; read "countless books"; "served as a positive mentor to his peers"; and "maintained a work assignment over the course of seven years." *Id.* at 11. He represents that he has not been subject to disciplinary action since 2022. *Id.*

The Court does not have any basis to disbelieve Jordan's claims to have grown in prison, and commends Jordan on these productive steps, which weigh in favor of his motion. However, as Jordan himself recognizes, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." 18 U.S.C. § 1B1.13(d). Because the other reasons adduced in support

12

of his motion do not rise to the level of extraordinary and compelling, Jordan's progress toward rehabilitation does not change the conclusion that a reduction in his sentence is not warranted. *See, e.g., United States v. Sica*, No. 14 Cr. 462, 2025 WL 3003540, at *2 (S.D.N.Y. Oct. 24, 2025) ("In the absence of extraordinary and compelling reasons, I cannot consider rehabilitation alone as a justification for a sentence reduction."); *United States v. Thomas*, No. 12 Cr. 174, 2025 WL 2879280, at *7 (S.D.N.Y. Oct. 8, 2025) (similar, and collecting cases).

### B. Section 3553(a) Factors

Even assuming the information on which Jordan relies—his pancreatitis, conditions at FCI Allenwood, and steps toward rehabilitation—together supplied a legally adequate basis for early release, the Court would still deny the application. That is because the section 3553(a) factors, in combination, continue to favor the sentence imposed.

At sentencing on September 6, 2019, the Court, in imposing the mandatory minimum term, held that, for multiple reasons, "a 15-year sentence is richly warranted in your case." Sent'g Tr. at 17. First, in light of Jordan's skein of violence, the Court found a weighty interest in just punishment:

> From the perspective of just punishment, this conduct demands a long sentence. During a period of a little under a year, you were behind an alarming spree of shootings and other acts of revenge. Those shootings could easily have resulted in multiple deaths. Shooting five shots into a moving car alone, as you did, could have caused a large number of casualties. Through some combination of sheer luck and bad aim, no one died of your conduct, but that is no thanks to you. The fact that you not only shot at others yourself but directed others to do so makes your crime all the more serious.

*Id.* at 17–19.

General deterrence also favored the sentence imposed, in that:

> Gang violence in this city and country is epidemic. The dockets in this courthouse make that plain. . . . It's imperative that the sentences in these cases, taken as a

> whole, convey a message that is sufficient to get the next would-be gang member to think twice before joining a gang or committing violence in support of it.

*Id.* at 19–20.

So did specific deterrence, particularly because Jordan had been undeterred by his several prior convictions, which included crimes of violence, and which the Court observed "should have gotten the message across to you to stop engaging in violence . . . [and] should have served as wake-up calls for you, but they didn't." *Id.* at 20.

Finally, and critically, the Court found the interest in public protection to counsel in favor of a lengthy sentence:

> You have proven yourself to be a danger to the community when you are at liberty. The mayhem and the repeated brazen acts of violence you brought about from November 2017 until October 2018 demonstrate that. There is a public interest in your being in a place where you can't shoot at cars or fire guns in public places.

*Id.* at 21.

In denying Jordan's initial compassionate release motion a year later, the Court held that these factors continued to support the sentence imposed. The Court held that Jordan remained a danger to public safety based on his offense conduct—which included partaking in multiple shootings, one of which resulted in a bystander being shot, ordering others to participate in shootings, and firing multiple shots at a moving car—and his prior offenses, which included a firearms offense, attempted assault, and reckless endangerment. *See* CR Decision at 7. The Court also found the interests of specific deterrence and public protection to remain weighty: "The Court cannot find today that the vastly shortened sentence Jordan seeks is compatible with public safety." *Id.* at 8. And it found that the overall section 3553(a) factors still favored the 180-month sentence, notwithstanding that, in light of the pandemic, one factor—the need to

14

provide the defendant with needed medical care—weighed more heavily in Jordan's favor than at sentencing. *Id.* As the Court summed up:

> [T]he Court cannot find that a sentence reduction on the order Jordan seeks would result in a sentence commensurate with "the nature and seriousness of the offense," "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, ... to provide just punishment for the offense, ... to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." The gravity of Jordan's crimes required, and requires, a meaningful sentence to protect the public from further violence; to reflect just punishment for these crimes; and to deter others from committing similar acts. For the reasons stated in detail at Jordan's sentencing, which the Court incorporates by reference, a sentence in the range of 180 months imprisonment was necessary to achieve those goals. Reducing Jordan's sentence by way more than half would badly disserve these important § 3553(a) factors.

*Id.* at 8 (citing 18. U.S.C. § 3553(a)).

The Court stands by that assessment today. Jordan's crime, consisting of a string of gang violence and mayhem that came to an end only upon his arrest, continues to require the sentence imposed as a matter of just punishment. And although Jordan appears to have made strides in prison, the Court cannot find that, if at liberty, he no longer would present a danger to shoot, assault, threaten, or otherwise endanger others.

The Court accordingly denies Jordan's motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (release permissible only if compatible with section 3553(a) factors); *see also United States v. Del Rosario*, No. 12 Cr. 81 (PAE), 2024 WL 5054912, at *6–7 (S.D.N.Y. Dec. 10, 2024) (section 3553(a) factors, considered "in combination," disfavored early release); *United States v. Butler*, No. 18 Cr. 834-10 (PAE), 2022 WL 17968627, at *3 (S.D.N.Y. Dec. 27, 2022) (similar); *United States v. Wright*, No. 15 Cr. 445-3 (PAE), 2022 WL 134870, at *5 (S.D.N.Y. Jan. 13, 2022) (similar); *United States v. Hope*, 464 F. Supp. 3d 646, 650 (S.D.N.Y. 2020) (similar).

## CONCLUSION

For the reasons stated above, the Court denies Jordan's motion for a reduction of sentence. The Clerk of Court is respectfully directed to terminate the motion pending at docket 711.

SO ORDERED.

                                                                                              PAUL A. ENGELMAYER
                                                                                              United States District Judge

Dated: November 12, 2025
           New York, New York